**STATE of Tennessee, Appellee,**

v.

**Danny Ray MEEKS, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Nov. 24, 1993.

Philip A. Condra, Dist. Public Defender, Jasper, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Christina S. Shevalier, Asst. Atty. Gen., Nashville, J. Michael Taylor, Dist. Atty. Gen., Steven M. Blount, Asst. Dist. Atty., Dayton, for appellee.

### *OPINION*

PEAY, Judge.

The Franklin County Grand Jury indicted the defendant for armed robbery and aggravated sexual battery. He was found guilty of both offenses in a jury trial and received an effective sentence of twenty years. The defendant appeals as of right and raises the following issues for consideration.

(1) Whether the trial court properly denied the defendant's motion to suppress evidence seized during the execution of a Grundy County search warrant.

(2) Whether the trial court properly denied the defendant's motion to suppress evidence obtained through a police informant.

(3) Whether the trial court properly controlled the State's cross-examination of a defense witness on the issue of alibi and defense counsel's cross-examination of a prosecution witness on the issue of his grand jury testimony.

(4) Whether the trial court properly denied the defendant's motion for a continuance.

(5) Whether the evidence presented at trial was sufficient to support a conviction on the charge of aggravated sexual battery.

(6) Whether the State violated the defendant's right to due process by presenting an improper closing argument.

We reverse both convictions and remand this case for a new trial.

At 9:45 p.m. on April 2, 1989, Drew and Betsy Pearson returned home from a social engagement and found two burglars inside their residence. The two subjects accosted the victims, forced them to open a safe, and then bound and gagged them.[1] Items reported missing included the contents of the safe, a gun collection, and the victims' 1986 Buick. Franklin County Investigator Tim Fuller and TBI Special Agent Larry Davis were assigned to investigate the case.

In November of the same year the defendant was arrested in Grundy County for the robbery and kidnapping of Roger Phipps. At this time the defendant's car was seized.[2] An inventory search of the automobile revealed evidence of the robbery of another couple, Mr. and Mrs. Gilliam, also of Grundy County, in which checkbooks and other personal items had been taken. Based on this and other information, Grundy County Deputy Sheriff Brian Wiley obtained a search warrant for the Meeks residence.

Authorities investigating the Pearson robbery participated in the search. On their direction, certain items of evidence not covered by the warrant or related to the Grundy County robberies were seized.[3] Shortly

---

1. The defendant's brother, Billy Murrell Meeks, was also charged in relation to the robbery, but his case was severed.

2. The car was actually registered to the defendant's wife, Debra Meeks.

3. Of particular importance, the TBI agent seized plastic ties, a ski mask, a toboggan, (2) two (2) dollar bills, silver certificates, (2) car floor mats, a box of seven (7) millimeter Remmington magnum shells, a box of .35 Remmington rifle shells, a box of .357 pistol shells, a sack of military

thereafter, the defendant was indicted by the Franklin County Grand Jury, and counsel was appointed by the court.

In August, 1990, the defendant was convicted of robbery in Grundy County. During his subsequent incarceration, he allegedly discussed with a fellow inmate plans to kill Investigator Fuller and Agent Davis. The inmate later became an informant for the State. In exchange for his continuing assistance the authorities agreed to request that his parole revocation be dropped. Agent Davis then launched an investigation into the defendant's alleged assassination plans.

The informant agreed to permit TBI Agent Davis to tap the informant's phone.[4] Thereafter, the informant recorded two phone conversations with the defendant and gave the tapes to Davis. Information from these tapes was used to locate a gun and holster which were later identified as property taken from the Pearson residence.

Evidence seized from the search of Meeks's house, as well as the gun and holster, was admitted into evidence against the defendant and over the objection of counsel.

In his first issue the defendant argues that no warrant should have been issued because the officer lacked probable cause, the issuing magistrate was not "neutral," the items to be seized were not particularly described, and the authorized seizure was unreasonable in scope. We find that, although the warrant may have been properly issued as to a search for evidence in the Phipps and Gilliam robberies, the search was unreasonable in that many items were seized at the direction of Franklin County Investigator Fuller who was not involved in the investigation of the Phipps and Gilliam robberies that were mentioned in Officer Wiley's affidavit. Nevertheless, we shall address the defendant's issues as presented.

The Fourth Amendment to the United States Constitution and Article 1, § 7 of the Tennessee Constitution require probable cause to be established before a search warrant may issue. This requirement is also expressly stated in Rule 41(c), Tenn.

R.Crim.P. "Probable cause" has been defined as "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that ... the evidence is in the place to be searched." Raybin, *Criminal Practice and Procedure*, § 18.50. *See Lea v. State*, 181 Tenn. 378, 181 S.W.2d 351, 352 (1944).

The defendant asserts that the affidavit supporting the warrant authorizing the search of his residence falls short of the showing of probable cause because (1) it was unlikely that any evidence of the robbery would be found due to the time lapse between the robbery and the warrant, (2) there was no logical nexus between the criminal behavior and the items to be seized, and (3) Officer Wiley improperly utilized reputation evidence. We disagree.

In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court held that where the validity of a warrant is questioned, the reviewing court should show "great deference" to the probable cause determination of the issuing magistrate. The reviewing court's standard should be whether, in light of all the evidence available, the magistrate had a substantial basis for finding probable cause. *See State v. Jacumin*, 778 S.W.2d 430, 431–32 (Tenn.1989).

■ The defendant first contends that probable cause was lacking because it was unlikely that any evidence of the robbery would be found due to the time lapse between the robbery and the warrant. Although the lapse of time between the occurrence of a crime and the issuance of a search warrant may affect the likelihood that incriminating evidence will be found, probable cause must be determined on a case by case basis. *Sgro v. United States*, 287 U.S. 206, 210–11, 53 S.Ct. 138, 140, 77 L.Ed. 260, (1932). In making this decision, the issuing magistrate should consider whether the criminal activity under investigation was an isolated event or of a protracted and continuous nature, the nature of the property sought,

---

blank shells, an H and R .22 revolver and holster, gold beads, and a gold pin.

4. The phone actually belonged to the informant's sister who agreed to the tap.

and the opportunity those involved would have had to dispose of incriminating evidence. *See United States v. Steeves,* 525 F.2d 33, 38 (8th Cir.1975); W. LaFave & J. Israel, *Criminal Procedure* § 3.3(g) (2d ed. 1992).

In this case, Officer Wiley's affidavit informed the magistrate that the defendant's criminal record included larceny and concealing stolen property at his residence. In addition, the affidavit stated that the defendant had been arrested for the Phipps robbery which had occurred only six days earlier. At that time the defendant's automobile had been seized as evidence of the Phipps robbery, and during an inventory search, Officer Wiley found cassette tapes and a cassette head cleaner which had been stolen during the Gilliam robbery thirty-two days earlier. Taken as a whole, these attestations could have reasonably indicated that other evidence of the robberies mentioned in the affidavit might still be present at the Meeks residence.

The defendant also argues that probable cause was lacking because no logical nexus existed between the criminal behavior and the items to be seized. *See* Raybin, *Criminal Practice and Procedure,* § 18.70. He asserts that Officer Wiley's affidavit failed to show a connection between the Grundy County robberies and the car seized, or the car and him, and that evidence obtained from the car should not have been used in support of the warrant to search his residence.

The affidavit stated that a car bearing Grundy County tag number QJN 321 had been seen parked in the vicinity of the Gilliam's stolen auto by Officer Tony Sons[5] of the Tracy City Police Department and Tony Gilliam, brother of the victim. This same car was later seized in connection with the Phipps robbery and kidnapping at which time it was determined that the car belonged to Debra Meeks and contained items taken from the Gilliam's car. Furthermore, it is not disputed that the defendant and Debra

Meeks shared a residence. Under these facts we do not find it unreasonable for the magistrate to have assumed that the defendant used the car registered in his wife's name from time to time even if no specific evidence as to that fact was presented. In light of this evidence, we believe that the magistrate had a substantial basis for finding a connection between the Grundy County robberies, Debra Meeks's car, and the defendant.

The defendant lastly contends that there was a lack of probable cause in that the affidavit supporting the warrant improperly utilized reputation evidence. He points out that Officer Wiley had no first-hand experience with the defendant's prior criminal activities and, therefore, should not have included this information in his affidavit. We disagree.

It is well settled that prior criminal history is relevant to the issue of probable cause. Raybin, *Criminal Practice and Procedure,* § 18.53. Actual prior contact between the defendant and the investigating officer in earlier cases is not necessary. *Id.* at § 18.58. The affidavit, thereby, properly referred to the defendant's criminal record and the results of an earlier search of his residence.

In his second argument concerning the improper issuance of the search warrant, the defendant contends that the issuing magistrate was not neutral. It is well established in Tennessee that "probable cause must be determined by a neutral and detached magistrate before the warrant is issued." *State v. Little,* 560 S.W.2d 403, 406 (Tenn.1978).

In this case Grundy County Judicial Commissioner Evelyn Brewer authorized the search warrant in question, and the defendant contends that Commissioner Brewer did not make an independent determination of probable cause, but merely "rubber stamped" Officer Wiley's affidavit. The defendant points out that Commissioner Brewer did not read every word in the affidavit, did not question Officer Wiley about its contents, and

---

5. Although there appeared to be some confusion over the make and model of the car identified by Officer Sons, this confusion was sufficiently off-

set by the fact that it was identified by a second person and by its tag number.

failed to define probable cause in a suppression hearing. Although this issue has merit, we nevertheless disagree that reversible error was committed.

■■ While an issuing magistrate cannot be said to have made an independent determination of probable cause without reading the affidavit at all, the defendant fails to provide us with anything that indicates a word-for-word reading is absolutely required. We therefore find that if a scanning overview of the affidavit raises probable cause in the mind of the magistrate, it is sufficient. In this case Commissioner Brewer asked Officer Wiley if the information contained in the affidavit was true. She later testified that she would not sign a blank warrant, nor one she had not read, simply because the officer had sworn that the information it contained was true. Taken as a whole, this indicates that Commissioner Brewer had sufficient knowledge of the contents of the affidavit to make an independent judgment on the issue of probable cause.

The defendant also argues that because Commissioner Brewer had said in the suppression hearing that she did not understand the meaning of the term probable cause, she did not understand the requirements of her job, and therefore, the requisite detached neutrality was absent. The defendant misstates Commissioner Brewer's testimony. She did not say that she did not understand "probable cause," but rather that she did not understand the question as it was presented by defense counsel. Moreover, Commissioner Brewer testified that she had made an "independent judgment" regarding the contents of the affidavit.

We recognize, as did the trial court, that Commissioner Brewer did not ably articulate the scope and requirements of her job, nor did she use the best possible method in evaluating the affidavit. We nevertheless find that Commissioner Brewer was "neutral and detached" as required by law.

The defendant next argues that the search warrant was improperly issued because the items listed to be seized were not sufficiently described. The Fourth Amendment to the United States Constitution and Article I, § 7 of the Tennessee Constitution require that items to be seized pursuant to a search warrant must be "particularly described." This requirement has been interpreted to mean that "the warrant must be sufficiently definite so that the officer executing it can identify the property sought with reasonable certainty." W. LaFave and J. Israel *Criminal Procedure* § 3.4(f) (2d ed. 1992). *See United States v. Blakeney,* 942 F.2d 1001, 1026 (6th Cir.1991). The defendant contends that the description of "cash money, pocket books, fire arms, jewelry, check books, [and] clothing items" taken in the Gilliam robbery and incorporated into the warrant by reference was insufficient to meet the particularity requirement.

■ The nature of the items to be seized under the warrant should be taken into consideration when determining whether the description is sufficient. *See State v. Ferguson,* 703 S.W.2d 179, 180 (Tenn.Crim.App.1985) ("forged T-shirts" sufficient); *State v. Melson,* 638 S.W.2d 342, 353 (Tenn.1982) ("a blunt object, knife, or object capable of being used to strike, stab, cut, penetrate, and other paraphernalia pertaining to this incident" sufficient) *Lea v. State,* 181 Tenn. 378, 181 S.W.2d 351, 353 (1944) ("intoxicating liquor" sufficient).

If an item can generally be found among other lawfully possessed objects of the same general classification, then greater care in the description is required. *See* W. Lafave & J. Israel *Criminal Practice* § 3.4(f) (2nd ed. 1992). However, a search warrant which sufficiently describes certain items but fails to provide a sufficient description for other items has been held to be partially valid if the inadequate portion can reasonably be severed. *Id.* Items found during the legitimate execution of the valid part of a warrant may be admissible.

■ In an appeal dealing with the validity of the same search warrant at issue in this case, this Court previously held that a more particular description of the stolen pocketbooks, firearms, jewelry and clothing could have been obtained from the Gilliams and

should have been included in the warrant.[6] This Court nevertheless concluded that the search warrant was partially valid in that the description of the Gilliams' checkbook was sufficient since it focused the executing officer upon a search for "checkbooks designated for the Gilliams' account or accounts and including their names." As a result, the tainted portion of the warrant was severed, and the reasonableness of the search and seizure was measured by the scope provided in the warrant's valid portion. *See Jones v. State,* 523 S.W.2d 942, 946 (Tenn.Crim.App. 1975). The facts being the same, we continue to hold that the search warrant was partially valid and allowed the executing officer to search the Meeks home, at least for the Gilliam checkbook.

■ Lastly, the defendant argues that the search warrant was improperly issued because the search itself was unreasonable. He cites the involvement of a Franklin County investigator in the search and the officer's confiscation of "every piece of jewelry" and "numerous items which did not fall even into the generic types set forth in Officer Wiley's affidavit." [7] We find the defendant's complaint meritorious.

In its brief the State cites this Court's opinion in *Armstrong v. State,* 548 S.W.2d 334, 336 (Tenn.Crim.App.1976) for the proposition that items not specifically mentioned in the warrant may be seized if they are relevant to the crime suggested by the warrant.

In the case at bar the Pearson robbery was not mentioned in Officer Wiley's search warrant affidavit. Franklin County Investigator Tim Fuller, though not involved with either of the robberies specifically mentioned in the affidavit, accompanied TBI Agent Davis to the Meeks home, participated in the search, and directed the Grundy County officers to seize objects for him. Numerous items were seized which were irrelevant to the specific crime suggested by the warrant.[8]

Moreover, in accordance with these facts, the items were not "inadvertently discovered" under the "plain view" requirements set out in *Armour v. Totty,* 486 S.W.2d 537, 538–539 (Tenn.1972).

In summary we hold that the trial court improperly denied the defendant's motion to suppress the evidence seized during the execution of the Grundy County search warrant. We therefore reverse and remand this case for a new trial and rule that the items seized during the aforementioned search are inadmissible upon retrial.

■ In his second issue the defendant alleges that the trial court improperly denied the defendant's motion to suppress evidence obtained through a police informant. He contends that his right to counsel was violated pursuant to the Sixth and Fourteenth Amendments of the United States Constitution and the Supreme Court decision in *Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985).

The Sixth Amendment provides that in "all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense." U.S. Const. Amend. VI. It is well established that the assistance of counsel attaches at the time "judicial proceedings have been initiated" against the defendant. *Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977). Furthermore, once the right to counsel has attached, it is the State's obligation "not to act in a manner that circumvents and thereby dilutes the protection afforded." *Moulton,* 474 U.S. at 171, 106 S.Ct. at 484.

In *Massiah v. United States,* 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964), the Supreme Court held that Massi-

---

6. *State v. Billy Murrell Meeks, Danny Ray Meeks, and Debra Meeks,* 867 S.W.2d 361 (Tenn.Crim. App.1993).

7. The inventory of property seized is over five pages long. In addition to the evidence presented at trial, it included a variety of items not admitted. Among these were collectible coins and coinbooks, swords, power tools, jewelry items and watches, a jewelry box, a Cross pen,

keychains and keys, scales, a set of miniature John Deere tractors, ammunition, truck floormats, pieces of carpet, a microcassette tape, a plumbing fitting and "2 plastic items."

8. Admitted into evidence at trial were such items as plastic strips, floor mats, and boxes of ammunition which were not mentioned, even generically, in Officer Wiley's affidavit.

ah's right to counsel was violated when a codefendant acting as a police agent "deliberately elicited" from the defendant evidence about the pending trial. In *United States v. Henry*, 447 U.S. 264, 274, 100 S.Ct. 2183, 2188–89, 65 L.Ed.2d 115 (1980), evidence obtained by a passive "jail plant" was held to be inadmissible because "[b]y intentionally creating a situation likely to induce Henry to make incriminating statements without the assistance of counsel, the Government violated Henry's Sixth Amendment right to counsel."

In this appeal, the appellant urges this Court to view *Moulton*, as indistinguishable from the case at bar. In *Moulton* two defendants, Colson and Moulton, were indicted for theft. Colson informed police of Moulton's intent to kill a state witness and agreed to record later telephone conversations with Moulton in exchange for a deal that no further charges would be brought against Colson. In the recordings thereafter obtained, Colson repeatedly asked Moulton to remind him of the details of the theft and encouraged him to describe his plan for killing the State's witnesses. The trial court admitted the tapes into evidence, and the Supreme Judicial Court of Maine reversed and remanded for a new trial, holding that the State "knew or should have known" that Moulton would make incriminating statements regarding crimes as to which charges were already pending. *Maine v. Moulton*, 481 A.2d 155, 160 (Me.1984).

On appeal to the Supreme Court, the Solicitor General argued that the tapes should not be suppressed because the police had other legitimate reasons for listening to Moulton's conversations with Colson, namely, to investigate Moulton's alleged plan to kill State witnesses. *Moulton*, 474 U.S. at 178, 106 S.Ct. at 488. In affirming the lower court's decision, the Supreme Court held that "the Maine police knowingly circumvented Moulton's right to counsel present at a confrontation between Moulton and a police agent, [and] the fact that the police had additional reasons for recording Moulton's meeting with Colson is irrelevant." *Id.* at 180, 106 S.Ct. at 489.

We agree that the cases are virtually indistinguishable. In the case at bar, in exchange for the informant's assistance, authorities agreed to request that his parole revocation be dropped. Also in this case, as in *Moulton*, the State argues that they had legitimate reasons for taping the conversations in that they were investigating threats. Interestingly, neither of the taped conversations between Mr. Cook, the informant, and the defendant contained any threats against Agent Davis.

In light of these circumstances and facts, we hold that the evidence of the gun and holster and Mr. Cook's testimony concerning such evidence were obtained in violation of the Sixth Amendment to the United States Constitution. We therefore direct that the aforementioned evidence is inadmissible upon retrial.

In the defendant's third issue, he contends that the trial court improperly controlled the State's cross-examination of a defense witness on the issue of alibi and improperly refused to permit defense counsel's cross-examination of a prosecution witness on the issue of his grand jury testimony.

"The propriety, scope, manner, and control of the examination of witnesses is a matter within the discretion of the trial judge, which will not be interfered with in the absence of an abuse thereof." *Coffee v. State*, 188 Tenn. 1, 216 S.W.2d 702, 703 (1948); *see State v. Conrad Bond*, No. 669, Sullivan County (Tenn.Crim.App. filed June 10, 1985, at Knoxville). This rule directly applies to the cross-examination of witnesses. *State v. Fowler*, 213 Tenn. 239, 373 S.W.2d 460, 466 (1963).

■ Tennessee Rule of Criminal Procedure 12.1 governs the notice of intent to use alibi as a defense. Subsection (f) prohibits admission into evidence of an intention to rely on such a defense if the defense is withdrawn. Pursuant to this rule, the defendant notified the State of its intent to use Ronnie Anderson as an alibi witness. The defendant contends, however, that the alibi defense was withdrawn at trial. In support of this contention he points out that Mr. Anderson was not questioned on direct examination about an alibi defense and that de-

fense counsel clearly informed the court of the withdrawal fact during a bench conference. We agree that the defense of alibi was withdrawn at trial and find that Tenn. R.Crim.P. 12.1(f) was violated.

During cross-examination the prosecution asked Mr. Anderson about his whereabouts on the date of the Pearson robbery. Defense counsel raised no objection to this question which was permissible as being "relevant to any issue in the case" under Tenn.R.Evid. 611. Defense counsel did object, however, when the prosecution asked Mr. Anderson if he knew that he had been listed as an alibi witness prior to the trial. The objection was properly sustained by the trial court, but the following dialogue concerning the list of potential alibi witnesses and the alibi defense was allowed to continue:

GENERAL POPE: Your Honor, please, let me just—I don't want to say anything in front of the jury, but my point is, this is, there is a document filed. They would have to know if he was going to be a witness to have given the notice well in advance as they did.

THE COURT: Then show him the document and ask him if he knows about it, General, but don't argue with him. It would save you a lot of time if you didn't do that.

Q You're Ronnie Anderson?

A That's me.

Q You're Route 1, Box 253–B, Tracy City, Tennessee?

A Yes.

Q That's your name and address?

A Yes.

Q Had you, and the date of this is January the 24th is when it's filed, had you agreed previously with any of the Meeks family to testify as an alibi witness for the defendant? Alibi means—

MR. CONDRA: (Interposing) Your Honor, may I approach on this and interpose an objection for the record?

(Whereupon, a bench conference was held on the record in the presence of the jury but out of the hearing of the jury as follows:)

MR. CONDRA: I want to say two (2) things on this record. Number 1, my question of this witness did not raise alibi. I did not raise alibi with this witness. Every question I said I want to ask you about January of '92. I did not raise alibi with this witness. This line of questioning by the DA, since I have not pursued that line, is improper, and I certainly had not supplied names of people who might be alibi witnesses to the potential alibi witnesses, and I filed the names of potential, but I have not raised in this proof in this witness, any question about April the 2nd and I respectfully object to this line of questioning. I have not raised a defense of alibi.

THE COURT: Overrule the objection. (Said bench conference having been completed, the following proceedings were had in the presence and hearing of the jury, to-wit:)

Q (GENERAL POPE:) My question to you, sir, you had agreed to testify on behalf of Mr. Meeks, that he was with you during the time of the commission of this offense up in Grundy County, is that right?

We find that the trial court committed prejudicial error in allowing inquiry into the defense of alibi pursuant to Tennessee Rules of Criminal Procedure 12.1(f). We note that the seriousness of this error was compounded when the State was allowed in closing argument to adversarially make use of the defendant's withdrawal of the alibi defense. We find that this error alone is sufficiently egregious to reverse the defendant's convictions.

The defendant next claims that the trial court improperly prohibited cross-examination of Agent Davis about his testimony before the grand jury. We find this complaint is unsupported by the record. During the entire course of the cross-examination of Agent Davis, only two objections were raised by the prosecution. The court never ruled on the first, the defense counsel having voluntarily changed the line of questioning. The second objection was overruled, and the questioning was allowed to continue as before. Hence, the trial court never denied the defendant the opportunity to cross-examine

Mr. Davis regarding his grand jury testimony.

■ In the defendant's fourth issue he contends that the trial court improperly denied the defendant's motion for a continuance made at the conclusion of the suppression hearing and renewed at the beginning of trial, three days later. The granting or denial of a continuance is a matter left to the sole discretion of the trial judge, whose decision will not be disturbed absent "a clear showing of gross abuse of his discretion to the prejudice of the defendant." *Baxter v. State*, 503 S.W.2d 226, 230 (Tenn.Crim.App.1973). This Court has previously stated that "[t]he only test is whether the defendant has been deprived of his [or her] rights and an injustice done." *State v. Goodman*, 643 S.W.2d 375, 378 (Tenn.Crim.App.1982). In order to reverse the judgment of the trial judge, we must be convinced that the defendant "did not have a fair trial and that a different result would or might reasonably have been reached had there been a different disposition of the application for continuance." *Baxter*, 503 S.W.2d at 230. Accord *Goodman*, 643 S.W.2d at 378.

The defendant asserts that he was prejudiced by the denial of his motion for continuance because it prevented him from conducting a proper investigation of Mr. Cook and his allegations so as to be able to formulate a defense strategy at trial. We disagree. The defendant knew of the State's intention to call Mr. Cook as a witness and the purpose of his testimony a full week before the trial. Consequently, the defendant was able to produce a witness at trial to rebut Mr. Cook's testimony.[9] Moreover, while preparing his motion for a new trial, the defendant had ample time to investigate the circumstances surrounding the gun and establish proof of any prejudice that he may have experienced as a result of the denial. No proof of prejudice was presented at the hearing on the motion for a new trial.

■ In his fifth issue the defendant challenges the sufficiency of the evidence supporting his conviction on the charge of aggravated sexual battery. Although reversal of this conviction is required for previously considered errors, we will address this issue. Count two of the indictment charged the defendant with aggravated sexual battery upon Betsy Pearson. In order to prove its case, the State was required to show that the defendant intentionally touched Betsy Pearson's breast for the purpose of sexual arousal or gratification, said contact being accomplished by use of force or coercion while the defendant was armed with a weapon. *See* T.C.A. § 39–2–606(a) (Supp.1988); § 39–2–603(a)(1) (Supp.1988). The defendant contends that the State failed to prove that the touching was "for the purpose of sexual arousal or gratification." We are satisfied that the State met its burden of proof as to this issue and that a rational trier of fact could find the defendant to be guilty beyond a reasonable doubt of the offense charged.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the proof adduced at the trial is sufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt. T.R.A.P. 13(e). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982).

The only direct evidence on this issue was Mrs. Pearson's testimony. She stated that, while holding her at gunpoint, the defendant had grabbed her breast and had threatened to "do stuff" to her if Mr. Pearson did not cooperate. She also testified that the defendant had threatened to "have a little fun with [her]," and that he had forced her down the

---

9. Mr. Ronnie Anderson was called by the defendant to testify that he had seen Mr. Cook bring the gun in question to Edna Meeks's house, rather than retrieve one from it as he had testified.

hallway stating "[o]kay, pretty thing, you're going with me". The defendant contends that the offensive contact was intended to force cooperation from Mrs. Pearson's husband and not for sexual gratification and was, therefore, "essentially incidental" to the robbery. *See State v. Anthony*, 817 S.W.2d 299 (Tenn.1991) (kidnapping conviction reversed because the movement or interference with liberty was incidental to the perpetration of a robbery).

We recognize that jurors may use their common knowledge and experience in making reasonable inferences from evidence. *See* 23A C.J.S. Criminal Law § 1380. Since the defendant already had Mrs. Pearson at gunpoint, it was unnecessary for him to grab her breast in order to elicit Mr. Pearson's cooperation. This is particularly true in light of the fact that Mr. Pearson was face down on the floor at the time of the grabbing and could not have seen the incident. Since the offensive contact was not "essentially incidental" to the robbery, the jury could have drawn on common knowledge to reasonably infer that the defendant had grabbed Mrs. Pearson's breast for the alternate purpose of sexual gratification. We therefore hold that the evidence presented at trial was sufficient to support the jury's guilty verdict of aggravated sexual assault.

The final issue raised by the defendant is whether the State violated the defendant's right to due process by presenting an im-

proper closing argument. He specifically alleges that the State violated his rights when it referred to Mr. Anderson's "alibi," asked about the whereabouts of Edna Meeks,[10] and argued that Mr. Anderson committed perjury.

Even assuming, without deciding, that these comments were improper, they do not rise to the level of reversible error. The defendant failed to raise a contemporaneous objection to the comments concerning Mr. Anderson's alibi, and the two other comments were minor and isolated in relation to the total argument presented by the State. We therefore hold that the defendant's right to due process was not violated by the State's closing remarks.

Based on this Court's findings as to the defendant's first, second, and third issues, we reverse the convictions and remand this matter to the trial court for further proceedings in conformity with this opinion.

PAUL G. SUMMERS, J., and PAUL R. SUMMERS, Special Judge, concur.

---

**10.** Edna Meeks, mother of the defendant, had testified at prior hearings, but was absent at this trial.