IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 23, 2002 Session

## STATE OF TENNESSEE v. GROVER LEE DUNIGAN

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 217588     Stephen M. Bevil, Judge**

_____

**No. E2002-00108-CCA-R3-CD**
**August 29, 2002**
_____

The defendant was indicted for first degree murder and convicted by a Hamilton County jury of the lesser-included offense of second degree murder. He was sentenced to 25 years imprisonment. In this appeal, the defendant contends (1) the evidence was insufficient to sustain his conviction; and (2) the trial court improperly limited cross-examination of a state witness regarding bias. After review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Lee Davis (at trial) and Bryan H. Hoss (on appeal), Chattanooga, Tennessee, for the appellant, Grover Lee Dunigan.

Paul G. Summers, Attorney General and Reporter; Peter M. Coughlan, Assistant Attorney General; William H. Cox, III, District Attorney General; and Barry A. Steelman and Christopher D. Poole, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

Rayshann Underwood testified the victim, the defendant, and a group of friends were at his house drinking and gambling on the evening of July 11, 1997. Underwood stated the game was stopped when two police cars drove by his residence. Underwood stated he then heard "a little altercation" at the side of the house between the victim and the defendant. He explained he thought it would not "lead up to anything;" there was just "loud talking;" and there was no physical altercation. Underwood testified he walked inside the house and heard one gunshot. He explained the defendant had recently bought a .38 pistol which he "flash[ed]" around with "cockiness."

Marcus Sales, Underwood's older brother, testified he arrived home at approximately 10:30 p.m. on the night of the shooting; he entered the residence; he heard a shot within fifteen minutes of his arrival; he exited the residence; he saw the victim stagger and fall; and he saw several people disperse. He further testified he saw nothing in the victim's hand.

Investigator Ralph Freeman testified that while on routine patrol he heard a shot, and someone ran in front of his cruiser. Freeman stated he heard screaming, called EMS and backup, exited his cruiser, and ran to the victim. An off-duty EMS employee rendered aid, and Freeman found no weapon on, near, or around the victim. Freeman estimated he was on the scene within seconds of hearing the shot.

Edward Moore, Jr., a friend of the victim and the defendant, testified he was gambling at Underwood's residence on the day of the shooting. Moore stated the defendant and victim began arguing on the porch and progressed to the side of the house; he followed them and attempted to break them up. Moore stated he then saw the defendant push the victim, step backwards a few steps, and pull his pistol. Moore said he turned away, heard the victim say "I don't care about that gun," and immediately heard one shot. Moore testified he then saw the defendant run across the street and almost hit a police cruiser. Moore stated the defendant owned a .38 revolver, which he would wield and say, "I got [sic] something for one of you young motherf---ers if you mess with me;" he saw the defendant with the gun earlier on the day of the shooting; he had not seen the victim with a weapon; and he did not see the victim attempt to hit or harm the defendant.

On cross-examination, Moore conceded he had been convicted of theft, selling cocaine, and had been placed on probation; he was then arrested on other cocaine charges; these and other charges were still pending; and he was on an "O.R. bond." He testified that although he drank beer and smoked marijuana all day prior to the shooting, it had no effect on his memory. Moore conceded he told officers four days following the shooting that the gunshot was fired "[p]robably about 15 seconds" after the defendant wielded the gun. Moore denied he was testifying favorably for the state for the prospect of receiving assistance regarding those charges.

Chattanooga Police Officer Edwin Duke testified he videotaped the crime scene and found no firearms nor shell casings.

Dr. Frank King testified the victim died from a gunshot wound to the head fired from a distance greater than two feet. Dr. King stated the bullet fragments recovered from the victim were fired from a .38 caliber pistol. Dr. King further testified the victim's hands were not on or near the gun barrel when it was fired because they exhibited no signs of heat or blast injury.

The defendant did not testify at trial.

# I. SUFFICIENCY OF THE EVIDENCE

The defendant contends the evidence was insufficient to sustain his conviction for second degree murder, arguing, at most, the evidence could only support a conviction of voluntary manslaughter. We disagree.

## A. Standard of Review

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. *Id.* This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

## B. Analysis

The jury rejected the charged offense of premeditated first degree murder and convicted the defendant of the lesser-included offense of second degree murder. The Tennessee Code defines second degree murder as "[a] knowing killing of another. . . ." Tenn. Code Ann. § 39-13-210(a)(1). A "knowing" killing is one in which the defendant acts with an awareness that his conduct is reasonably certain to cause the death of the victim. *See* Tenn. Code Ann. § 39-11-106(a)(20); State v. Ducker, 27 S.W.3d 889, 896 (Tenn. 2000).

The evidence viewed in a light most favorable to the state establishes the following facts: the defendant acquired the murder weapon within two weeks of the murder; during those two weeks, he wielded the weapon threatening any "young motherf---ers" that "mess[ed] with [him];" the defendant and the victim argued verbally; during their argument, the defendant pushed the victim and wielded his pistol; and the unarmed victim made no threatening moves toward the defendant prior to the defendant's shooting the victim with the .38 caliber pistol. Whether a homicide is second degree murder or voluntary manslaughter is a question for the jury. State v. Johnson, 909 S.W.2d 461, 464 (Tenn. Crim. App. 1995). Based on the evidence, the jury could reasonably conclude the defendant knowingly killed the victim.

## II. CROSS-EXAMINATION

The defendant contends the trial court improperly limited his inquiry into the pending charges of state witness Edward Moore. Again, we disagree.

### A. Standard of Review

The propriety, scope, manner, and control of the examination of witnesses are matters within the discretion of the trial judge and will not be disturbed in the absence of an abuse of that discretion. State v. Dishman, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995); State v. Meeks, 876 S.W.2d 121, 128 (Tenn. Crim. App. 1993). Testimony regarding possible bias of a witness is admissible pursuant to Tennessee Rule of Evidence 616 which provides that a witness may be cross-examined as to bias or prejudice against a party. *See* State v. Reid, 882 S.W.2d 423, 428 (Tenn. Crim. App. 1994). Further, cross-examination as to bias of a witness involves the constitutional right of confrontation. *See* Davis v. Alaska, 415 U.S. 308, 316-17, 94 S. Ct. 1105, 1110, 39 L. Ed. 2d 347 (1974); Reid, 882 S.W.2d at 428.

### B. Analysis

The defendant contends the trial court improperly disallowed questioning regarding Moore's release on his own recognizance while awaiting the pending charges. Initially, we note the defendant failed to include this issue in his motion for new trial and failed to make reference to the trial transcript. Thus, the issue is waived. Tenn. R. App. P. 3(e); Tenn. Ct. Crim. App. R. 10(b); State v. Schaller, 975 S.W.2d 313, 318 (Tenn. Crim. App. 1997); *see also* Tenn. R. App. P. 27(a)(7) and (g).

Regardless of waiver, the record clearly reflects defense counsel fully and forcefully cross-examined Moore regarding his pending charges, and the witness testified he was released on an o.r. bond. Defense counsel conceded he was not suggesting that an agreement between the witness and the state had been reached as to promises of leniency. Furthermore, the trial court specifically stated defense counsel could "ask him if any promises or deals have been made to him in that regard, and I will let you bring out the motive for testifying or the bias. . . ." We see no abuse of discretion by the trial court. This issue is without merit.

Accordingly, we affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE