IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 25, 2005

# STATE OF TENNESSEE v. JOSEPH VERMEAL

**Direct Appeal from the Circuit Court for Warren County**
**No. F-8405   Larry B. Stanley, Jr., Judge**

----

**No. M2005-00568-CCA-R3-CD - Filed December 28, 2005**

----

The appellant, Joseph Vermeal, was convicted by a jury in the Warren County Circuit Court of attempted aggravated sexual battery and was sentenced to four years incarceration in the Tennessee Department of Correction. On appeal, the appellant complains that the evidence is insufficient to support his conviction, the trial court erred in refusing to permit his expert witness to testify, and the trial court erred in imposing consecutive sentencing. Upon our review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Phillip T. Clemons, McMinnville, Tennessee, for the appellant, Joseph Vermeal.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Dale Potter, District Attorney General; and Thomas J. Miner, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The appellant was indicted by the Warren County Grand Jury on one count of aggravated sexual battery. In the light most favorable to the State, the proof adduced at trial revealed that on August 26, 2000, Pioneer Baptist Church sponsored a block party in the parking lot of the nearby Country Place Apartments. After the party ended, the victim, N.O.,[1] who was seven years old, rode her bicycle with several friends. The victim was dressed in blue jeans and a Tweety Bird shirt. One of the other children told the victim that they could obtain ice cream at the appellant's apartment.

----

[1] This court identifies minor sexual abuse victims by their initials.

The children went to the appellant's apartment and found that the appellant was at home, sitting on the porch. After receiving the appellant's permission, the children went inside and got popsicles from the appellant's freezer. At the appellant's request, the children ate their popsicles on the appellant's front porch instead of inside his apartment. Afterward, the children went inside the appellant's apartment to watch television and jump on the appellant's waterbed.

Soon, all of the children except the victim and J.P., another female child, went home.[2] The victim remained in the appellant's living room for thirty minutes to an hour, watching cartoons on cable television, while J.P. went in the appellant's bedroom to jump on the bed. The appellant joined J.P. in the bedroom. Some time after the appellant went into the bedroom, the victim was standing by the front door looking outside when she felt someone touch her right buttock. During her testimony at trial, the victim demonstrated how she was touched. The victim believed that J.P. had touched her, but when she turned around she saw the appellant. The appellant slid his hand underneath her shirt and touched her breasts. She explained that when he touched her, "he . . . pressed down." The appellant removed his hand, got a beer from the kitchen, and returned to the bedroom.

The victim was afraid that she would get into trouble for being in the appellant's apartment and for letting him touch her. She remained in the apartment for a few minutes then went outside. She rode her bike for ten minutes before being stopped by "Uncle E.J.," Elvis Joseph Kersey. Kersey told the victim that one of his friends had seen her in the appellant's apartment. The victim did not tell Kersey what the appellant had done because she was embarrassed and did not want to discuss the incident. Kersey and the victim went to find the victim's dad, Howard Orcutt. Both Kersey and Orcutt lived in Country Place Apartments.

When the victim and Kersey found Orcutt at his apartment, Kersey told Orcutt that the victim had been in the appellant's apartment. Orcutt left, going immediately to the appellant's apartment. He found the appellant sitting on the porch of his apartment. Orcutt stepped on the appellant's porch and asked the appellant why his daughter had been in the appellant's apartment. The appellant grabbed Orcutt's neck and pushed him. A scuffle ensued with Orcutt emerging as the victor.

Upon his return to his apartment, Orcutt found the victim sitting on the porch with her grandmother, Barbara Bevilagua. The victim was crying. Bevilagua asked the victim if the appellant had touched her. Initially, the victim stated that he had not; however, shortly thereafter she acknowledged that the appellant had touched her. When asked where the appellant touched her, the victim, who was sitting down, gestured below her waist. Orcutt went back to the appellant's apartment, intending to kill him. However, police had been called as a result of the previous struggle. The appellant was taken from the scene in an ambulance.

The victim was taken to the Department of Children's Services (DCS) where she was

[2] J.P. was also a victim of sexual abuse by the appellant. See State v. Joseph Vermeal, No. M2004-00046-CCA-R3-CD, 2005 WL 1000237, at *1 (Tenn. Crim. App. at Nashville, Apr. 29, 2005).

interviewed by a case worker, Melba Mooneyham. The victim initially told Mooneyham that nothing happened at the appellant's apartment. At trial, the victim explained that at the time of the first statement, she had not wanted to discuss the incident because she was embarrassed, frightened, and believed she would get in trouble for being in a stranger's apartment. At a second interview with Mooneyham on October 10, the victim told Mooneyham about the details of the molestation. Mooneyham believed that the victim was more comfortable with her and forthright during the second interview.

At the conclusion of the proof, the jury acquitted the appellant of the charged offense but found him guilty of the lesser-included offense of attempted aggravated sexual battery. The trial court imposed a sentence of four years. The court ordered that the sentence for the instant offense be served consecutively to the nine-year sentence he had previously received for the aggravated sexual battery of J.P. On appeal, the appellant challenges the sufficiency of the evidence, the trial court's evidentiary ruling, and the imposition of consecutive sentencing.

## II. Analysis

### A. Sufficiency of the Evidence

In his first issue, the appellant challenges the sufficiency of the evidence supporting his conviction, specifically complaining that there was no evidence from which a jury could infer that the touching was for the purpose of sexual arousal or gratification. In his second issue, the appellant contends that the trial court erred in overruling his motion for judgment of acquittal because the victim's testimony contained too many inconsistencies to be believed. As these issues are closely related, we will address them together.

Initially, we note that the record reflects that the appellant made a motion for a judgment of acquittal at the end of the State's proof. It is well-established that a motion for a judgment of acquittal made at the conclusion of the State's proof is waived by an appellant when he chooses to present evidence on his behalf. State v. Thomas, 158 S.W.3d 361, 387 (Tenn. 2005) (quoting State v. Ball, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998)) (appendix). Regardless, "[t]he standard by which the trial court determines a motion for judgment of acquittal at the end of all the proof is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction." State v. Thompson, 88 S.W.3d 611, 614-15 (Tenn. Crim. App. 2000). Therefore, we will address the appellant's complaints as a challenge to the sufficiency of the evidence.

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

In the instant case, the appellant was convicted of attempted aggravated sexual battery. "Aggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim" when the "victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4) (2003). "'Sexual contact' includes the intentional touching of the victim's [or] the defendant's . . . intimate parts, . . . if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6) (2003). It is permissible for a jury to "use their common knowledge and experience in making reasonable inferences from evidence." State v. Meeks, 876 S.W.2d 121, 131 (Tenn. Crim. App. 1993). Specifically, a jury may draw upon their common knowledge to infer that an accused forced intimate contact for the purpose of sexual arousal or gratification. Id. Additionally, criminal attempt occurs when a person acting with the kind of culpability otherwise required for the offense:

> (1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
>
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
>
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a)(1)-(3) (2003).

In the instant case, the proof is uncontroverted that the victim was under thirteen years of age at the time of the offense. Moreover, the victim testified that the appellant touched her breasts and her buttocks, and she demonstrated at trial how the touching occurred. The victim explained that when he touched her breast, he "pressed down." We conclude that the jury, drawing upon its common knowledge, could have inferred that the appellant committed the touching of the victim's breasts and buttocks for the purpose of sexual arousal or gratification. See State v. Alton Darnell Young, No. M1999-01166-CCA-R3-CD, 2000 WL 380103, at *2 (Tenn. Crim. App. at Nashville,

4

Apr. 14, 2000). A rational jury could have determined that the appellant performed a substantial step towards the commission of aggravated sexual battery. Thus, there was sufficient evidence to support the appellant's conviction for attempted aggravated sexual battery.

As his second issue, the appellant contends that the trial court erred in overruling his motion for a judgment of acquittal "based upon [the victim's] inconsistent statements thereby cancelling out her testimony." Specifically, the appellant maintains that the victim's version of events at trial was so inconsistent with the version of events she related to Mooneyham, the proof should be subject to cancellation. In Tennessee, "contradictory statements by a witness in connection with the same fact cancel each other." State v. Matthews, 888 S.W.2d 446, 449 (Tenn. Crim. App. 1993). However, "[t]he rule of cancellation is typically limited to circumstances in which the witness has sworn to each statement." State v. Cayle Wayne Harris, No. M2000-02143-CCA-R3-CD, 2001 WL 1218582, at *2 (Tenn. Crim. App. at Nashville, Oct. 12, 2001). Nevertheless, "[t]his rule of cancellation applies only when inconsistency in a witness' testimony is unexplained and when neither version of [her] testimony is corroborated by other evidence." Matthews, 888 S.W.2d at 449 (citing Taylor v. Nashville Banner Pub. Co., 573 S.W.2d 476, 483 (Tenn. App. 1978)).

In the instant case, the appellant complains that the version of events which the victim told Mooneyham differs from the version of events the victim related at trial. As there is no indication that the statements to Mooneyham were sworn, the victim's testimony is thus not subject to the rule of cancellation. Regardless, the victim clearly explained any discrepancies in her testimony at trial. See State v. Caldwell, 977 S.W.2d 110, 118 (Tenn. Crim. App. 1997). Accordingly, the victim's testimony was properly considered by the jury and the trial court in determining the appellant's guilt.

## B. Expert Witness

As his next issue, the appellant argues that the "trial court erred in not allowing appellant's expert to testify at this trial as to the questioning of children." Generally, the trial court has broad discretion in determining the qualifications, admissibility, relevancy, and competency of expert testimony. See State v. Stevens, 78 S.W.3d 817, 832 (Tenn. 2002). As such, this court will not overturn the trial court's ruling on the admissibility of expert testimony absent an abuse of that discretion. See State v. Ballard, 855 S.W.2d 557, 562 (Tenn. 1993).

The factual basis for the appellant's claim was best recited by the trial court in its order granting the State's motion to prohibit Dr. William Bernet, a prospective expert witness for the defense, from testifying at trial. The trial court related that the State filed a request for discovery under Tennessee Rule of Criminal Procedure 16(b) on June 18, 2002, and a motion to compel the appellant to respond to the discovery request on August 15, 2002. On October 1, 2002, the appellant responded that he did not intend to call an expert to testify at trial. On November 25, 2002, the appellant filed a "second response," setting forth his intention to call Dr. William Bernet as an expert. The trial court found that the notice did not allow the State "a proper opportunity to prepare

for the witness's testimony and the witness's testimony must therefore be excluded."[3] The court also found that the proposed testimony did not meet the requirements of Tennessee Rules of Evidence 702 "in that it will not substantially assist the trier of fact to determine a fact in issue, but instead addresses an issue of witness credibility which is an issue to be determined by the jury."

The appellant included in the record for our review an offer of proof of the proposed testimony of Dr. Bernet.[4] During the offer of proof,

> Dr. Bernet testified that he was a graduate of Harvard Medical School and was board certified "in general psychiatry and in child and adolescent psychiatry and in forensic psychiatry." Dr. Bernet asserted that his testimony would relate to three issues. First, he would explain to the jury "the proper methods for interviewing children in investigating allegations of maltreatment." Second, he would discuss "the various mechanisms, psychological mechanisms, by which false statements are made by children." Finally, he would testify regarding "what has been studied in research with children in these situations and to be able to explain or to list different factors that are consistent with true allegations and different factors that are consistent with false allegations of abuse."

> As an example, Dr. Bernet explained that he would inform the jury that asking a potential child sexual abuse victim suggestive, leading, or repetitive questions was ill-advised. Dr. Bernet, had "reviewed the interview" of the DCS worker and JP and concluded that JP had been asked questions which influenced the answers she gave. Dr. Bernet also noted that there were indications in JP's previous statements which suggested that the allegations were true, and there were other indications which would suggest the allegations were false. Dr. Bernet stated that his testimony would serve to aid the jury in determining the credibility of the statements of the child witnesses and "help them be aware of issues they need to be aware of."

State v. Joseph Vermeal, No. M2004-00046-CCA-R3-CD, 2005 WL 1000237, at *5 (Tenn. Crim. App. at Nashville, Apr. 29, 2005).

On appeal, the appellant challenges the trial court's exclusion of Dr. Bernet's testimony,

---

[3] The trial was set to begin on December 3, 2002.

[4] The proffer was originally made in the appellant's previous trial relating to the aggravated sexual battery of J.P.

arguing that the testimony was reliable and would substantially assist the trier of fact. Tennessee Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

Further, McDaniel v. CSX Transportation, Inc., 955 S.W.2d 257, 265 (Tenn. 1997), suggests the following criteria a court may consider in determining the reliability of proposed expert testimony:

> (1) whether scientific evidence has been tested and the methodology with which it has been tested; (2) whether the evidence has been subjected to peer review or publication; (3) whether a potential rate of error is known; (4) whether . . . the evidence is generally accepted in the scientific community; and (5) whether the expert's research in the field has been conducted independent of litigation.

In State v. Coley, 32 S.W.3d 831 (Tenn. 2000), our supreme court examined the strictures of Rule 702 and McDaniel in determining the admissibility of expert testimony concerning the reliability of eyewitness testimony. The court noted that the testimony proposed in Coley was "of a general nature designed to affect the juror's decision on the credibility of witnesses." Coley, 32 S.W.3d at 835. The court emphasized that "the assessment of witness credibility and the role of fact-finder is always left to the jury, regardless of the issue present in the case." Id. Finally, the court found that

> expert testimony concerning eyewitness identification simply offers generalities and is not specific to the witness whose testimony is in question. Moreover, we are of the opinion that the subject of the reliability of eyewitness identification is within the common understanding of reasonable persons.

Id. at 837. Thus, the court concluded that the trial court had properly excluded Coley's expert witness. Id. at 838.

Our review of the record in the instant case convinces us that the testimony of Dr. Bernet regarding the interviewing techniques of alleged child sexual abuse victims is akin to that proposed in Coley. Dr. Bernet's testimony was geared toward assessing the credibility of the child witnesses. The assessment of witness credibility rests in the province of the jury. Therefore, we conclude that the trial court in the instant case properly excluded the testimony of the appellant's prospective expert witness.

7

## C. Sentencing

As his final issue, the appellant argues that the trial court erred in ordering the appellant to serve his instant sentence consecutively to the nine-year sentence for his previous aggravated sexual battery conviction. The petitioner contends that the two sentences should have run concurrently.

Appellate review of the length, range or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d) (2003). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellant in his own behalf; and (7) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210 (2003); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence(s). See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

We note that "[w]hether sentences are to be served concurrently or consecutively is a matter addressed to the sound discretion of the trial court." State v. Adams, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997). Tennessee Rule of Criminal Procedure 32(c)(2) provides that consecutive sentencing may be ordered when a defendant is convicted of an offense and "has additional sentences not yet fully served" if the defendant meets the criteria for mandatory or discretionary consecutive sentencing. In the instant case, there is no allegation that the appellant meets the criteria for mandatory consecutive sentencing. Therefore, we must consider whether the appellant qualifies for discretionary consecutive sentencing.

Tennessee Code Annotated section 40-35-115(b) (2003) contains the discretionary criteria for imposing consecutive sentencing. See also State v. Wilkerson, 905 S.W.2d 933, 936 (Tenn. 1995). The trial court may impose consecutive sentencing upon finding the existence of any one of the following criteria:

> (1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an

investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b)(1)-(7) (2003).

In the instant case, the trial court found that consecutive sentencing was proper because the appellant had been convicted of two or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the appellant and victim or victims, the time span of appellant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims. The appellant's previous aggravated sexual battery conviction stemmed from the sexual abuse of J.P. in his apartment on the night of the instant offense. The appellant penetrated J.P. with his penis while the victim in the instant case watched cartoons in the living room. During the same evening, the appellant fondled the buttocks and breasts of the instant victim, resulting in a conviction for attempted aggravated sexual battery. Thus, the appellant was clearly guilty of two offenses involving the sexual abuse of a minor.

The sexual abuse of minors, alone, is insufficient to sustain the imposition of consecutive sentencing. We must also look at "the aggravating circumstances arising from the relationship between the appellant and victim or victims, the time span of [the appellant's] undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims." Tenn. Code Ann. § 40-35-115(b)(5). The time span of the appellant's undetected sexual activity is relatively short. Moreover, there was no particular relationship between the appellant and the victims. However, the scope of the sexual acts and the extent of the residual mental damage to the victims was great. At the time of the offenses, the

9

appellant was a single, white, fifty-one-year-old male. The victims, who were seven and eight years old, came into his apartment, lured by ice cream. He allowed the children to watch cable cartoons and jump on his bed. In the midst of this activity, the appellant sexually accosted two minor victims. In the instant case, Orcutt, N.O.'s father, testified at the sentencing hearing that the victim still suffers from her ordeal, noting that her grades had dropped and had not improved by the time of the sentencing hearing. He also testified that the victim suffered from depression and nightmares, and she feared that the appellant would jump out from behind things and kill her. After considering the foregoing, we conclude that the trial court did not abuse its discretion in imposing consecutive sentencing.

### III. Conclusion

Finding no error, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE