IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 12, 2015

**STATE OF TENNESSEE v. STEVEN DARRELL LITTLE**

**Appeal from the Criminal Court for Davidson County**
**No. 2013-C-2565     Monte Watkins, Judge**

_____

**No. M2014-01927-CCA-R3-CD – Filed September 28, 2015**

_____

A Davidson County judge convicted the Defendant, Steven Darrell Little, of one count of indecent exposure and sentenced him to six months of probation and ordered a $500 fine. On appeal, the Defendant contends that the evidence is insufficient to sustain his conviction. After review, we conclude that there is no error, and we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ. joined.

Elaine Heard, Nashville, Tennessee, for the appellant, Steven Darrell Little.

Herbert H. Slatery III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Glenn Funk, District Attorney General; and Nathan McGregor, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from interactions between the Defendant and a ten-year old girl. With regard to his actions, a Davidson County grand jury indicted the Defendant for three counts of indecent exposure. At a bench trial on these charges, the following evidence was presented: Robert Eggers testified that on September 22, 2012, he was at a Michael's craft store located in the 100 Oaks Mall in Davidson County. He recalled that it was late afternoon or early evening and that he was accompanied by his ten-year-old twin daughters.

Mr. Eggers testified that he was next to one of his daughters in an aisle inside the store and that his other daughter was at the end of the same aisle. Mr. Eggers noticed the Defendant, who was in an electronic wheelchair, stopped at the "end counter" facing where his daughter was standing in the aisle. Mr. Eggers noted that the Defendant was facing his daughter's backside. Mr. Eggers asked his daughter to come toward him, and the Defendant left. Mr. Eggers said that he went back to the end of the aisle, and the Defendant returned and was again aimed right at his daughter's backside. Mr. Eggers instructed his other daughter to remain where she was and he went down around the aisle and approached the Defendant from behind. He saw that the Defendant had his hand under a blanket and down his pants and was rubbing himself while staring at Mr. Eggers's daughter. Mr. Eggers saw the Defendant's penis in the Defendant's hand.

Mr. Eggers said he was surprised, and he asked the Defendant if he had something "he wanted to share with [him]." The Defendant responded "no," and Mr. Eggers told the Defendant that he needed to "get moving." Mr. Eggers was shortly thereafter approached by two store employees who asked him if he had seen what the Defendant had done.

Mr. Eggers asked the store employees to stay with his daughters, and he followed the Defendant around the store. He saw the Defendant following other young females. Mr. Eggers again approached the Defendant and told him that he needed to leave the store because Mr. Eggers had called the police. Mr. Eggers had, in fact, contacted police, who dispatched officers from the Vanderbilt Police Department. Mr. Eggers gave the officers a statement. Mr. Eggers saw the Defendant speaking with police as Mr. Eggers left the store with his daughters.

During cross-examination, Mr. Eggers explained that, when he approached the Defendant from behind, he could clearly see the Defendant stroking his penis. While doing this, the Defendant was staring right at Mr. Egger's daughters who were standing nearby.

Linda Jennings, a Vanderbilt Police Department officer, testified that she responded to this call. When she arrived, she saw a man in a wheelchair, with a blanket on his lap, exiting the store. She noted that he had not made any purchases at the store. Officer Jennings informed the Defendant of why she was at the store and asked him for identification. The Defendant provided her with an identification card, and she asked him to wait while she spoke with Mr. Eggers. After getting Mr. Eggers's statement, she asked the Defendant about the incident. The Defendant informed her that he was "just warming his hands, that he had a circulation problem." The Defendant explained to her

that he was a registered sex offender and said he had been "falsely accused of photographing an eleven year old female."

Officer Jennings testified that she issued the Defendant a misdemeanor citation for public indecency. She then saw the Defendant take a pair of dark blue gloves from his wheelchair and place them on his hands. She recalled that it was a "very warm" and humid day in late September and that the sun was shining into the front of the store. The call about the Defendant's behavior came in at about 4:53 p.m. Officer Jennings attempted to obtain a video surveillance from the Michael's store, but the surveillance cameras did not record the incident.

The Defendant testified that he had been paralyzed from the chest down for thirty-one years as a result of a motorcycle accident. He said that he had no ability to have an erection. He had not had an erection, he said, since the accident. The Defendant said that he frequently had urinary tract issues and had to change his catheter frequently. The Defendant also testified that he often got cold and that he would place his hands in the bottom of his shirt to keep his hands warm.

He said that he was at Michael's on the day in question purchasing Christmas cards for a friend. He said that he was getting envelopes and that he needed a price on a "Paint-By-Number[]" item. The Defendant explained that his friend's birthday was in December and that, as her gift, he handmade Christmas cards for her to give to her friends and family. The Defendant said that the temperature that day was in the eighties but that the store was "ice cold." He said that he was in the same aisle as Mr. Eggers and his two daughters "[p]atiently waiting" for them to get out of the way so that he could find the price for the item that he wanted to purchase.

The Defendant said that Mr. Eggers was "ignoring" his daughters and using his cell phone. He said that, while he was waiting for the Eggers to move, three female employees, each of whom was wearing a jacket, went by and asked him if he needed help. He told them, "no" but inquired as to why it was so cold in the store. The employees told him that their thermostat was controlled by a computer at "corporate," so they could not change the temperature. The Defendant said that his conversation with the employees seemingly got Mr. Eggers's attention. He looked toward the Defendant, who looked back judgmentally based upon Mr. Eggers ignoring his daughters. The Defendant said Mr. Eggers "threw his hands up on his hips" and looked at him indignantly like what he was doing was none of the Defendant's business. He then said to his daughters "Let's go, girls." The daughters protested, but he insisted that they leave. The Defendant said that Mr. Eggers never walked up behind him.

3

During cross-examination, the Defendant testified that, after he got the price of the items he needed, he went outside to warm up a little before making a purchase. He maintained that he never followed Mr. Eggers's daughters or any other girls. The Defendant denied that he had a blanket with him that day, saying that it was eighty degrees outside. The Defendant said that he had forgotten that he had a pair of gloves with him, but, after speaking with the officer, he recalled the gloves were in his backpack. He took them out and put them on after speaking with her. The Defendant restated that he did not have any sexual desire and did not get erections. He then agreed that he had been convicted, since being paralyzed, of aggravated sexual exploitation of a minor. The Defendant opined that the only reason that Mr. Eggers came forward against him was not because he saw the Defendant's penis, from which he would have seen a catheter protruding, but because the Defendant looked at him judgmentally.

Based upon this evidence, the trial court found the Defendant guilty of indecent exposure, a Class B misdemeanor, and sentenced him to six months of probation and imposed a $500 fine.

## II. Analysis

On appeal, the Defendant contends that the evidence is insufficient to sustain his conviction because the State did not prove the necessary elements of indecent exposure. Specifically, he contends that the State did not prove that the touching could be reasonably construed as being for the purpose of sexual arousal or gratification or that the Defendant reasonably expected the alleged act or acts to be viewed by another. Therefore, he asserts, his conviction cannot stand. The State counters that the Defendant's contention is meritless based upon the testimony of the witnesses at trial.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e), *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). "The

standard of review [for sufficiency of the evidence] is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S .W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

In this case, the Defendant was convicted of indecent exposure. According to Tennessee Code Annotated section 39-13-511 (2014):

(a)(1) A person commits the offense of indecent exposure who:

5

(A) In a public place, as defined in § 39-11-106, or on the private premises of another, or so near thereto as to be seen from the private premises:

(i) Intentionally:

(a) Exposes the person's genitals or buttocks to another; or

(b) Engages in sexual contact or sexual penetration as defined in § 39-13-501; and

(ii) Reasonably expects that the acts will be viewed by another and the acts:

(a) Will offend an ordinary viewer; or

(b) Are for the purpose of sexual arousal and gratification of the defendant;

The evidence, viewed in the light most favorable to the State, proved that Mr. Eggers saw the Defendant, seated in a wheelchair, in the aisle of a Michael's store with his hands in his lap under a blanket while looking at Mr. Eggers's daughter's buttocks. Mr. Eggers went around the aisle to approach the Defendant from behind his wheelchair. When he did so, he saw the Defendant, who was seated in front of him in the wheelchair, rubbing his penis with his hand while looking at Mr. Eggers's daughter. Mr. Eggers told the Defendant to move along, and then, after securing the supervision of his daughters with Michael's employees, Mr. Eggers followed the Defendant. He saw the Defendant following several other young females in the store while rubbing his penis under the blanket. After being informed that the authorities had been called, the Defendant left the store without purchasing anything. Officer Jennings said that she saw the Defendant with a blanket on his lap, and when she inquired about the incident, the Defendant told her that he had poor circulation and was cold, so he put his hands in his lap where it was warm. The Defendant denied the ability to get or maintain an erection, and he said he did not have a blanket with him on that warm day in September.

The Defendant specifically contends that the State provided no proof that his actions constituted "sexual contact" in that they were for the purpose of his sexual arousal or gratification. "Sexual contact" is defined as the:

Intentional touching of . . . the defendant's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of . . . the

6

> defendant's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification.

T.C.A. § 39-13-501 (2014). The Defendant calls into question whether Mr. Eggers actually saw the Defendant's penis at all, and he further maintains that he is physically incapable of having an erection. The trial court clearly credited Mr. Eggers's account of the events. The Defendant's ability to have an erection is not an element of the offense. The trier of fact can draw on common knowledge and experience to determine that a man fondling his own penis while staring at a young girl's buttocks was doing so for sexual arousal or gratification. *See e.g., State v. Jack Warren Emert, Jr.*, No. 03C01-9802-CC-00074, 1999 WL 512029, at \*2 (Tenn. Crim. App., Knoxville, Jul. 21, 1999) (citing *State v. Meeks*, 876 S.W.2d 121, 131 (Tenn. Crim. App. 1993) (determining that a jury can draw on common knowledge and experience to ascertain if the defendant touched the victim for sexual arousal or gratification)), *no Tenn. R. App. P. 11 application filed*.

The Defendant next asserts that the prosecution failed to meet its burden of proof that the Defendant "reasonably expected the alleged act or acts to be viewed by another." We cannot agree. A man, rubbing his penis in a public store while at least three people, two of whom are minor girls, are within close proximity can reasonably expect that his act will be viewed by another. This argument is without merit.

We conclude that the trial court did not err when it found that the State had proven each of the elements of indecent exposure. The evidence is sufficient to sustain the Defendant's conviction, and he is not entitled to relief on this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

7