IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 9, 2019 Session

## STATE OF TENNESSEE v. WAYNE LUSTER BOYKIN, SR.

**Appeal from the Circuit Court for Madison County**
**No. 17-144    Roy B. Morgan, Jr., Judge**

_____

### No. W2018-00297-CCA-R3-CD

_____

A Madison County Jury convicted the Defendant-Appellant, Wayne Luster Boykin, Sr., of possession with intent to sell more than one-half ounce of marijuana (Count 1), possession with intent to deliver more than one-half ounce of marijuana, (Count 2), both Class E felonies, and possession with intent to use drug paraphernalia (Count 3), a Class A misdemeanor. See T.C.A. §§ 39-17-417, -425(a)(1). He received an effective sentence of four years in confinement. Prior to trial, Boykin filed a motion to suppress arguing that the search warrant and supporting affidavit were based on "stale" information. The trial judge, who was the issuing magistrate for the search warrant, transferred the motion to suppress to be heard by another judge. Following the denial of the motion to suppress, the case was transferred back to the original trial judge to conduct the trial. In this appeal as of right, the Defendant argues: (1) the trial court that heard the motion to suppress erred in denying his motion to suppress the search and his subsequent statement; (2) the trial court that conducted the trial and the motion for new trial erred in its review of the motion to suppress; and (3) that he received an excessive sentence. Upon our review, we remand Count 3 for entry of an amended judgment. In all other respects, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed;**
**Remanded for Entry of Amended Judgment**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and J. ROSS DYER, J., joined.

David W. Camp, Jackson, Tennessee, for the Defendant-Appellant, Wayne Luster Boykin, Sr.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; Jody Pickens, District Attorney General; and Rolf Hazlehurst, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Motion to Suppress.** During the execution of a search warrant where over 100 grams of marijuana was found in his home, the Defendant told an officer, "I just sell a little weed to get by." He was subsequently indicted for the aforementioned offenses. At a preliminary hearing, the affiant of the search warrant testified generally that he had received information from a confidential informant pertaining to the presence of drugs at the Defendant's home within "thirty days" of the execution of the search warrant.[1] Based upon this testimony, the Defendant later moved to suppress his statement regarding the marijuana, arguing that the warrant and supporting affidavit were stale. In response, the State argued that the information contained in the affidavit of the search warrant was not stale and instead provided that a "reliable confidential source" had been inside the Defendant's home and had seen marijuana within 72 hours of the officer's application for the warrant. Upon review of the motions, Judge Roy Morgan, Jr., issued an order transferring the motion to suppress to Judge Donald Allen, reasoning that

> [T]his Court was the issuing Court for the search warrant which is the subject of the Defendant's motion. . . . [I]t would not be proper for this Court to hear the Motion to Suppress and that accordingly the Defendant's motion should be and is transferred[.]

At the August 4, 2017 suppression hearing, defense counsel began by arguing that "there were statements contained in that affidavit that were in essence not correct or certainly contradictory to Investigator Shoate's later statements that he made during a preliminary hearing concerning these charges." Defense counsel insisted that there was such a "discrepancy" that "the affidavit cannot be relied upon" by the court. In response, the State explained that "yes, there was information that the State received within 30 days, which could arguably be considered stale; however, there was additional information within 72 hours, which would not be stale."

The affidavit and return on the search warrant were admitted as exhibits to the hearing and provided, in pertinent part, as follows:

> [T]hat Affiant has SPOKEN TO A RELIABLE CONFIDENTIAL SOURCE THAT HAS BEEN IN [THE DEFENDANT'S RESIDENCE] IN JACKSON TENNESSEE WITHIN THE LAST 72 HOURS. THE RELIABLE CONFIDENTIAL SOURCE ADVISED THAT WHILE THEY WERE INSIDE THE RESIDENCE THEY OBSERVED [THE DEFENDANT, HIS SON, AND HIS WIFE] IN POSSESSION OF

---

[1] The appellate record does not include the transcript from the preliminary hearing.

MARIJUANA FOR RESALE. THE CONFIDENTIAL SOURCE HAS PROVEN TO BE RELIABLE IN THE PAST BY PROVIDING INFORMATION THAT HAS LED TO THE SEIZURE OF AT LEAST 30 POUNDS OF MARIJUANA, 270 GRAMS OF COCAINE, 3 GRAMS OF METHAMPHETAMINE, 21 VICODIN PILLS, 27 LORATABS PILLS, VARIOUS ITEMS OF DRUG PARAPHERNALIA, AND AT LEAST 8 ILLEGALLY POSSESSED FIREARMS. THE RELIABLE CONFIDENTIAL SOURCE HAS ALSO PROVIDED INFORMATION THAT HAS LED TO THE ARREST AND CONVICTION OF AT LEAST 58 PEOPLE IN THE CIRCUIT COURTS AND GENERAL SESSIONS COURTS OF THE 26th JUDICIAL DISTRICT OF TENNESSEE.

Investigator Nathaniel Shoate of the Madison County Sheriff's Department testified that he submitted the affidavit requesting a search warrant be issued for the Defendant's residence, which was signed on September 11, 2016, and executed the next day. Following the search, the Defendant and his son were arrested. Investigator Shoate confirmed that the affidavit in this case alleged that a confidential informant had observed marijuana inside the Defendant's home within 72 hours of the execution of the warrant.

Investigator Shoate recalled testifying at the preliminary hearing on December 1, 2016, during which he was asked numerous questions regarding the circumstances leading up to his request to obtain the search warrant. When asked whether he disclosed during the preliminary hearing that the confidential informant had been inside the Defendant's home within 72 hours of the search, Investigator Shoate said, "I was asked . . . when did my investigation start, and I said approximately 30 days prior to me executing the search warrant." Defense counsel then dedicated a substantial portion of the hearing attempting to impeach Investigator Shoate. The following line of questions, in relevant part, occurred:

> Q. Okay. And [the transcript of the preliminary hearing] says very clearly in there that you couldn't recall on what day you received [information of high traffic from the residence], but it was prior to executing the search warrant. Do you see where you said that?
>
> A. I do.
>
> Q. Do you also see where you were asked to pin down the time, and it said, "Okay. You've got to have some type of timeframe. Was it a

- 3 -

week?  Was it five days?  Three days?  Two days?  What was it?"
And your answer was, "It was less than 30 days."  Do you see that?

A.   I do.

Q.   Okay.  And do you also see the next question at line 15, where it says, "Less than 30 days when you got your tip from your confidential informant and when you did your actual stakeout, investigation, and surveillance.  Was that done a week before you executed the search warrant?  Was it 20 days?  10 days?  How long was it"?  And you said, "I just recall it was less than 30 days."  Do you see that?

A.   I do.

Q.   You did not say on December 1, 2016 that you had said on September 11th of 2016 that it was within 72 hours; did you?

A.   I did not.

Q.   You left a broad stroke, and you said at least the leeway of up to 30 days; is that right?

A.   But you have to understand, this was not the last information that I received.

Investigator Shoate agreed that he had obtained information from his confidential source less than 30 days prior to his application for the search warrant.  Investigator Shoate explained that he did not specifically testify at the preliminary hearing that the "last information" he received was within 72 hours of obtaining the warrant because he was not asked that question.  Pressed further as to why he did not specify that he received "the information" within 72 hours, Investigator Shoate said, "[t]hat's because we always, always within 72 hours.  That's the only way we can execute a search warrant.  We have to have the information within 72 hours."  Investigator Shoate reiterated that he was never asked if the information was received "within 72 hours."  When asked if his testimony at the preliminary hearing was "accurate," Investigator Shoate responded,

[Y]ou have to understand it.  Prior to the 72 hours, I also received information that there was marijuana in the house, that's the reason why we got on the house.  Then we seen [sic] it 72 hours, within 72 hours, which

- 4 -

gave the information to go obtain a search warrant and get the judge to sign it.

The following exchanged then occurred:

Q.     -- 72 hours; is it? I mean, I'm trying to figure this out. If your testimony is it was definitely within 72 hours, why did you testify differently when you testified in City Court on December 1 of [20]16, knowing you did an affidavit in September of [20]16, month's prior? Why is the testimony different than what's in the affidavit? That's all I'm asking. I mean, are you trying to tell the Court that when you said less than 30 days, you meant 72 hours? Is that what you're trying to tell us?

A.     No. What I'm trying to tell the Court is I received information 30 days prior to -- within 30 days of me executing the search warrant and then within 72 hours of me getting the search warrant typed up and executed, that's what I'm trying to tell the Court.

Q.     But you didn't tell Judge Anderson that on December 1 of [20]16 when you were asked that question; did you?

A.     No, sir.

Investigator Shoate agreed that there was some discrepancy between his affidavit and his testimony at the preliminary hearing. However, he insisted that he did not include the information pertaining to his prior surveillance or any other information received thirty days prior to the application in the affidavit because it was not relevant.

The only testimony regarding the statement provided by the Defendant during the search was as follows:

Q.     The statement alleged to have been made by [the Defendant] indicating some information regarding knowledge or ownership of the marijuana found was made at the time you were executing the search warrant; is that correct?

A.     That is correct.

Q.     And you have referred to that, if I recall, as a "spontaneous statement."

A.     I did.

Q.     And would you agree with that that [sic] the only reason you were in the home and the only reason you could have been in the position you were in to have had a conversation with [the Defendant] or to have heard that statement is because you had this warrant?  Do you need me to repeat that question?

A.     No, that's -- of course.

Q.     Okay.  So, you would agree with me, you don't hear that statement if you're not in that house, and you're not in that house if you don't have that warrant; is that right?

A.     That is correct.

On September 15, 2017, the trial court entered a written order denying the motion to suppress.  In it, the court made the following findings:

1.     The information upon which the search warrant was based was not stale.

2.     The information contained in the affidavit in support of the search warrant was true and accurate.

3.     There was sufficient probable cause contained in the affidavit in support of the [] search warrant for Judge Roy B. Morgan, Jr. to issue a search warrant.

4.     The affidavit in support of the search warrant did not contain a false statement made with intent to deceive the Court.

5.     The affidavit did not contain misrepresentations of fact.

**Trial.**  At the October 2, 2017 trial, Investigator Shoate testified that on September 12, 2016, he executed a search warrant on the Defendant's home in search of marijuana.  A blue zipper bag containing a substance that appeared to be marijuana, scissors, and a set of digital scales was found downstairs in the home.  In the Defendant's son's bedroom, officers found another pair of scissors and a substance that appeared to be marijuana.  A marijuana-like substance was also found in an SUV parked outside the Defendant's home.  Investigator Shoate confirmed that these items were indicative of the

sale of narcotics. In the home, officers also recovered a bank card and a Tennessee driver's license bearing the name, Mr. Wayne Boykin, Jr., an identification card with the name "Mr. Wayne Boykin," and mail addressed to Mary Kay Boykin and Wayne Boykin with the address of the home subject to the search warrant. Investigator Shoate confirmed that the substance found during the search was sent to the Tennessee Bureau of Investigation's (TBI) crime lab and later tested positive for 103.65 grams of marijuana.[2]

On cross-examination, Investigator Shoate testified that at the time of the search, he believed the Defendant, his wife, and their son lived at the home. He was unable to recall who drove the SUV containing marijuana and admitted it could have been the Defendant's son. No fingerprint or DNA analysis was performed on the bags containing marijuana. Originally, the Defendant's son was charged with the same drug-related offenses; however, those charges were eventually dismissed. The Defendant, his wife, and their son were present at the time of the search.

Lieutenant Chris Long of the Madison County Sheriff's Office testified that he was involved in the search of the Defendant's home. Lieutenant Long testified that while the Defendant was detained during the search, the Defendant said, "I just sell a little weed to get by." On cross-examination, Lieutenant Long confirmed that he heard the Defendant utter the statement; however, he was unaware that he was not listed on the original affidavit. Lieutenant Long did not enter the home during the initial search and was unware of the location where the marijuana was found. Lieutenant Long specifically recalled the statement made by the Defendant because "[i]t's not every day someone tells you they sell weed." After hearing the statement, Lieutenant Long "immediately went to Investigator Shoate and made him aware of this spontaneous statement [the Defendant] made and asked him to put in his notes." On redirect, Lieutenant Long confirmed that he was first noticed as a witness on August 23, 2017, during a court proceeding when all parties were present.

Cora Greer was the only witness to testify on behalf of the Defendant. She and the Defendant worked together at a local hotel for roughly eight years, where she served in a supervisory position over the Defendant. She believed the Defendant was a hard worker.

At the conclusion of trial, the jury found the Defendant guilty as charged and imposed a fine of $5,000 for Count 1 (possession with intent to sell more than one-half ounce of marijuana), $5,000 for Count 2 (possession with intent to deliver more than one-half ounce of marijuana), and $2,500 for Count 3 (possession with intent to use drug paraphernalia).

---

[2] Both parties stipulated to the TBI report.

**Sentencing.** At the November 13, 2017 sentencing hearing, the State entered the Defendant's presentence investigation report as an exhibit. The parties agreed that the Defendant was a Range II, multiple offender with a sentencing range of two to four years.

Brad Langford had known the Defendant for over six years and testified that he owned investment property across from the Defendant's home. Although he never lived at the property, he met with the Defendant on several occasions. He testified that the Defendant kept an "eye" on his property and was a "great neighbor, a good person, [and a] good human being." The crimes for which the Defendant was convicted did not change his opinion of the Defendant.

Hazel Staples of Premier Mortgage testified that she had known the Defendant for ten years. The Defendant was referred to her for a mortgage loan. Staples said she was never concerned about the Defendant's character or given any reason to report him as a "high risk individual." On cross-examination Staples said she was not aware of the Defendant's prior or current criminal convictions.

Cynthia Yarbrough, the Defendant's cousin, testified that they worked together at a local hotel. She characterized the Defendant as an "excellent" worker, "trustworthy," and "dependable." He was "always a very good person, kind-hearted." She was aware of the Defendant's convictions, but they did not change her opinion of him.

Joe McCurry, the Defendant's second cousin, testified that he was aware of the Defendant's prior and current convictions. He considered the Defendant to be a "very gentle person," "outgoing," and a person who "believe[s] in helping anyone." He asked the court to give the Defendant leniency.

At the conclusion of the sentencing hearing, the court applied the Defendant's two prior felony and four prior misdemeanor convictions as an enhancement factor. The court found that the Defendant's criminal conduct in this case neither caused nor threatened serious bodily injury and applied that as a mitigating factor. The court noted that the Defendant had a theft conviction for over $60,000 and a second-degree murder conviction for which he had previously been incarcerated. The court further noted,

> [I]t's shocking that he [sic] having been found guilty would have violated the law again and take any kind of chance on going back to the penitentiary. It's obvious, based on the finding of guilt, and I take that as he's guilty at this point, that the penitentiary didn't correct him from criminal ways, and that concerns me.

. . . We're dealing with marijuana, illegal in the State of Tennessee, and not just an itsy bitsy amount of marijuana. So that does concern me. I point all this out because under those circumstances, again noting the one mitigating factor, I do find that to not impose some sentence to serve would take away from the seriousness of this and ignore the fact that you haven't learned your lesson and just totally ignored it. You could just keep coming back periodically with criminal violations, and that saddens me, and I know it probably saddens you, too, but I don't find that alternative sentencing is appropriate in this case because of the record we discussed and the fact that you've served sentence and not learned your lesson. [41-42]

Finally, the court upheld the jury-imposed fines,[3] merged Count 1 (possession with intent to sell more than one-half ounce of marijuana) and Count 2 (possession with intent to deliver more than one-half ounce of marijuana), and sentenced the Defendant to four years for each count, and 11 months, 29 days for Count 3 (possession with intent to use drug paraphernalia), to be served concurrently, for a total effective sentence of four years at thirty-five percent release eligibility.

**Motion for New Trial.** On December 12, 2017, the Defendant filed a motion for new trial alleging that the evidence was insufficient to warrant a conviction and that his sentence was excessive. On December 21, 2017, the Defendant filed an amended motion for new trial incorporating his original motion and further alleging that the court erred in denying his motion to suppress. On December 28, 2017, the State filed a response to the Defendant's motion alleging that the evidence was sufficient, that the sentence and fines were in conformity with the sentencing statute, and that the issue regarding the search warrant was not properly before the trial court. Specifically, the State claimed that the "issues of the search warrant were properly preserved and the proper procedure is for the defendant to raise the issues of the search warrant before the Court of Appeals."

At the December 28, 2017 motion for new trial hearing, the Defendant moved to bifurcate the hearing. In doing so, he argued that the trial court should hear the issues pertaining to sufficiency of the evidence and excessive sentencing raised in the first motion for new trial, but that Judge Allen, the trial judge who ruled upon the motion to suppress, should hear the issues pertaining to the motion to suppress raised in the amended motion for new trial. Specifically, the Defendant argued that in light of the fact that Investigator Shoate "testified regarding statements made that he didn't even hear and never identified the officer that did hear it calls into question the validity of whether or

---

[3] Throughout the record and briefs, there is some discrepancy with the fine imposed for Count 3, unlawful possession of drug paraphernalia. In the trial and sentencing transcripts, the fine is listed as $2,500; however, on the judgment of conviction and in the briefs, the fine is listed as $250.

not that suppression should have ever been denied in the first place if the proper witnesses were not before the court."

On February 13, 2018, the trial court entered a written order denying the Defendant's motion and amended motion for new trial. In it, the court made the following findings:

A. There was sufficient evidence to warrant a conviction.

B. That the sentence of imprisonment was not excessive and was in conformity with the requirements of the Tennessee sentencing statute.

C. That the fines imposed were not excessive and were in conformity with the Tennessee sentencing Statute.

D. The Motion to Suppress that was filed on June 26, 2017 was not heard by this Court due to a conflict. The Motion to Suppress was heard by the Honorable Judge Donald A. Allen in Division II of the Circuit Court of Madison County. The Motion to Suppress was denied. The Motion and Amended Motion for New Trial filed by [the Defendant] alleges there was error in denying the Motion to Suppress. That the Motion and Amended Motion for New Trial asserted, in part, that new information had come to light since the hearing on the Motion to Suppress which needed to be presented to Judge Donald A. Allen.

[The Defendant] has requested that Judge Donald A. Allen hear the Motion and Amended Motion for New Trial as it relates to the denial of the Motion to Suppress. This Honorable Court denies [the Defendant's] request. This Honorable Court affirms the decision of Judge Donald A. Allen in denying the Motion to Suppress and finds there was no error in Judge Donald A. Allen's denial of the Motion to Suppress. [The Defendant] is not entitled to a new trial on this issue.

It is from this written order that the Defendant timely appeals.

ANALYSIS

**I. Denial of Motion to Suppress.** The Defendant argues that Judge Allen, the trial judge who heard the motion to suppress, erred in denying his motion to suppress his statement to Lieutenant Long because the search warrant and supporting affidavit were based on stale information.[4] Additionally, the Defendant claims that Lieutenant Long, who heard the "spontaneous" statement, did not testify at the suppression hearing and Investigator Shoate made no mention of him, thus, "undermining [Investigator] Shoate's testimony at the [] hearing." In response, the State argues, and we agree, that the information supporting the search was not stale and that the Defendant has failed to establish any prejudice as a result of Investigator Shoate's testimony at the suppression hearing.

Our standard of review applicable to suppression issues involves a mixed question of law and fact. State v. Garcia, 123 S.W.3d 335, 342 (Tenn. 2003). A trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise. State v. Meeks, 262 S.W.3d 710, 722 (Tenn. 2008); State v. Cox, 171 S.W.3d 174, 178 (Tenn. 2005); State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Odom, 928 S.W.2d at 23. In addition, the party who prevails in the trial court "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Id. Although deference is granted to the trial court's findings of fact, the application of the law to those facts is a question of law which this court reviews de novo. State v. Saine, 297 S.W.3d 199, 205 (Tenn. 2009) (citing State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997)). The trial court's conclusions of law are also reviewed de novo. State v. Carter, 160 S.W.3d 526, 531 (Tenn. 2005) (citing State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000)).

The Defendant contends that the warrant lacked probable cause because the information included in the supporting affidavit was stale. The United States and Tennessee Constitutions state that search warrants shall issue only upon probable cause. U.S. Const. amend. IV; Tenn. Const. Art. 1, section 7. "Probable cause requires reasonable grounds for suspicion, supported by circumstances indicative of an illegal act." State v. Smotherman, 201 S.W.3d 657, 662 (Tenn. 2006). In order to establish probable cause, the affidavit supporting the search warrant "must set forth facts from

---

[4] The Defendant weaves various other issues throughout the argument section of his brief including whether he was properly advised of his Miranda rights prior to the statement. We agree with the State and conclude that these issues are waived for failure to raise them below and/or support them with argument or citation to the record. See Tenn. R. App. P. 27(a); Tenn. R. App. P. 10(b).

which a reasonable conclusion may be drawn that the contraband will be found in the place to be searched" and, likewise, "must allege that the contraband sought to be seized or the illegal activity in question exists at the moment the search warrant is to be issued." State v. Norris, 47 S.W.3d 457, 470 (Tenn. Crim. App. 2000) (citing State v. Longstreet, 619 S.W.2d 97, 99 (Tenn. 1981)). Staleness must be determined on a case-by-case basis. State v. Meeks, 876 S.W.2d 121 (Tenn. Crim. App. 1993). In determining whether a lapse of time between obtaining evidence and executing a search warrant removes probable cause, "the issuing magistrate should consider whether the criminal activity under investigation was an isolated event or of a protracted and continuous nature, the nature of the property sought, and the opportunity those involved would have had to dispose of incriminating evidence." Id. at 124-25.

As an initial matter, the affidavit supporting the search warrant clearly shows that the affiant, Investigator Shoate, had spoken to "a reliable confidential source that has been in [the Defendant's residence] within the last 72 hours. The reliable confidential source advised that while they were inside the residence they observed [the Defendant, his father, and his mother] in possession of marijuana for resale." We conclude that the affidavit, on its face, was not stale, and therefore, established probable cause for a magistrate to issue a search warrant. See State v. McCormick, 584 S.W.2d 821 (Tenn. Crim. App. 1979) (affidavit alleging that defendants had been observed in possession of a quantity of marijuana "in the past 72 hours," was not stale and established probable cause at the time issuance of the warrant was sought).

To the extent that the Defendant is attempting to invalidate the affidavit by impeaching the statements made by the affiant, Investigator Shoate, we likewise conclude that he is not entitled to relief. See State v. Willis, 496 S.W.3d 653, 721 (Tenn. 2016) ("There are two circumstances that authorize the impeachment of an affidavit sufficient on its face, (1) a false statement made with intent to deceive the Court, whether material or immaterial to the issue of probable cause, and (2) a false statement, essential to the establishment of probable cause, recklessly made.") (citing State v. Little, 560 S.W.2d 403, 407 (Tenn. 1978)). The bulk of the motion to suppress hearing was dedicating to impeaching Investigator Shoate with his testimony from the preliminary hearing regarding the time frame of his investigation. Under vigorous cross-examination, Investigator Shoate maintained that his statement within the affidavit regarding the "72 hours" was accurate. He explained that his investigation of the Defendant began "30 days" prior to obtaining the warrant. Although the Defendant attempted to impeach the affiant, the motion to suppress hearing shows that he was never directly asked at the preliminary hearing what day or when the confidential source observed criminal activity inside the Defendant's home, as reflected in his affidavit. Rather, as we read the transcript from the suppression hearing, Investigator Shoate was asked when he received information about high drug traffic coming from the Defendant's home. Accordingly, we

- 12 -

conclude that the statement within the affidavit was neither false nor misleading to the issuing magistrate, and the search warrant was supported by probable cause.

The Defendant also takes issue with the fact that Investigator Shoate was not the officer who heard his "spontaneous" statement during the execution of the search warrant; however, Investigator Shoate was the officer who testified at the motion to suppress hearing. Based on Investigator Shoate's testimony at the suppression hearing, the Defendant suggests that Investigator Shoate gave the court the false impression that he did, in fact, hear the Defendant's statement. We disagree. Once again, the record shows that Investigator Shoate was not asked during the motion to suppress hearing (1) if he heard the Defendant's statement; or (2) if he did not, which officer heard the Defendant's statement. The questions pertaining to the statement were minimal, occurred on the heels of the hearing, pertained only to when the statement was made, and emphasized the obvious fact that the statement would not have been given but for the search warrant. More importantly, the Defendant did not challenge the existence of the statement in his motion to suppress or at trial. We fail to see, and the Defendant fails to argue, how any misunderstanding as to which officer heard the statement materially impacted his staleness challenge to the search warrant. He is not entitled to relief as to this issue.

II. **Motion for New Trial Ruling.** Next, the Defendant claims that Judge Morgan, the trial judge who conducted his trial and motion for new trial hearing, erred in denying the motion to suppress because the trial court was not in an informed position to do so. Specifically, the Defendant alleges the fact that Lieutenant Long heard the Defendant's statement during the search instead of Investigator Shoate was "new evidence" that should have been presented in a bifurcated hearing before Judge Allen, the trial judge who conducted the motion to suppress. The Defendant also claims that the matter is not properly preserved for appeal. In response, the State contends, and we agree, that the Defendant has failed to present new evidence and that the trial court properly adjudicated the issues raised in the motion for new trial.

This issue stems from the trial judge, Judge Morgan, transferring the motion to suppress to another trial judge, Judge Allen, based on a perceived conflict. Out of an abundance of caution, the motion to suppress was transferred because Judge Morgan was the issuing magistrate for the search warrant. We take this opportunity to observe that "[a] trial judge 'is not disqualified from hearing a case because he or she has knowledge of the facts of the case.'" State v. Thornton, 10 S.W.3d 229, 237 (Tenn. Crim. App. 1999) (citing State ex rel Phillips v. Henderson, 423 S.W.2d 489, 492 (Tenn. 1968)). Similarly, a judge "who initially issues a search warrant is not thereafter so interested in the cause as to be disqualified[.]" Hawkins v. State, 586 S.W.2d 465, 466 (Tenn. 1979). We nevertheless conclude that the Defendant is not entitled to relief.

At the root of the Defendant's argument is that Judge Allen, the trial judge who heard the motion to suppress, was deprived of "new" evidence, the fact that Lieutenant Long heard the Defendant's statement that he "sold a little weed to get by," in determining whether the warrant complied with the Fourth Amendment. In resolving this issue, it is important to recognize that the sole ground for moving to suppress the Defendant's statement was the lack of probable cause based upon staleness of the information in the affidavit. Moreover, as noted above, the motion to suppress was dedicated to impeaching Investigator Shoate with the time frame of his investigation provided at a preliminary hearing with the time given in the search warrant. Investigator Shoate was neither asked nor did he insinuate that he heard the Defendant give the statement. Under these circumstances, the fact that Lieutenant Long was the officer who heard the statement cannot be said to be evidence that was withheld from the court. We conclude that, Judge Morgan, who presided over the trial and the motion for new trial, properly considered the motion to suppress from Judge Allen in the motion for new trial. Accordingly, the Defendant is not entitled to relief.

**III. Excessive Sentence.** Lastly, the Defendant claims that the sentence and fines imposed were excessive and unwarranted given the circumstances of his conviction. The State contends, and we agree, that the sentence and fines were supported by the proof and in accordance with the applicable sentencing principles.

We review the length of a sentence imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." Id. "If, however, the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008).

A trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in sections 40-35-113 and 40-35-114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing. T.C.A. §§ 40-35-210(b)(1)-(7). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence

alternative or length of a term to be imposed." Id. § 40-35-103(5). The court must impose a sentence "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. §§ 40-35-103(2), (4).

The parties agreed that the Defendant was Range II, multiple offender, with a sentencing range of two to four years. See T.C.A. §§ 39-17-417, -425(a)(1); see also id. § 40-35-112(b)(5). Thus, the trial court's four-year concurrent sentence is within the statutory range and presumed reasonable. The jury imposed fines of $5,000 and $2,500, for the possession with intent to sell/deliver and the possession of drug paraphernalia convictions, respectively. The trial court, prior to imposing sentence, noted the Defendant's prior criminal history which consisted of two felony and four misdemeanor convictions. The trial court also acknowledged that the Defendant was on parole when he committed the instant offenses. In mitigation, the trial court noted that the Defendant's conduct neither caused nor threatened serious bodily injury. The court reflected upon the character witnesses who testified on behalf of the Defendant and the Defendant's good work ethic. The court was nevertheless concerned that the Defendant had previously served a substantial amount of time and had not "learned his lesson." The trial court additionally noted that not imposing some sentence to serve would take away from the seriousness of the offense. The Defendant fails to make any argument as to why his sentence and fines are excessive. Upon our review, the record supports the imposition of the four-year sentence, and he is not entitled to relief.

## CONCLUSION

We note a discrepancy between the transcript from the jury trial, which reflects a $2,500 fine for the drug paraphernalia conviction, and the judgment, which reflects a $250 fine. Based on these inconsistencies, the unlawful possession of drug paraphernalia conviction (Count 3) is remanded to the trial court for clarification and entry of an amended judgment. In all other respects, the judgments of the trial court are affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE