IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 13, 2021

## STATE OF TENNESSEE v. ROBERT JOSEPH MCBRIDE

**Appeal from the Circuit Court for Bedford County**
**No. 18912     Forest A. Durard, Jr., Judge**

————————————————————

### No. M2020-00765-CCA-R3-CD

————————————————————

Defendant, Robert Joseph McBride, was indicted by the Bedford County Grand Jury for one count of aggravated sexual exploitation of a minor involving a number of materials exceeding 25; eight counts of sexual exploitation of a minor, each involving a number of materials exceeding 100; and one count of sexual exploitation of a minor involving a number of materials exceeding 50.  Following the trial court's denial of Defendant's motion to suppress evidence obtained pursuant to a warrant to search Defendant's house and computer, Defendant entered guilty pleas to eight counts of sexual exploitation of a minor involving materials exceeding 100, all Class B felonies.  The agreed upon sentence was 12 years on each count, to be served concurrently.  Defendant reserved for our review eight certified questions of law.  We conclude that only Defendant's question regarding the staleness of the information supporting the search warrant, is dispositive.  After reviewing the record and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and J. ROSS DYER, JJ., joined.

Roger Clay Parker, Shelbyville, Tennessee, for the appellant, Robert Joseph McBride.

Herbert H. Slatery III, Attorney General and Reporter; Cody N. Brandon, Assistant Attorney General; Robert J. Carter, District Attorney General; and Mike Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

***Motion to Suppress***

At the hearing on Defendant's motion to suppress, Detective Ronnie Durm of the Winchester Police Department testified that he was trained through the International Crimes Against Children Task Force in peer-to-peer software used to investigate child pornography. Detective Durm explained that Shareaza is a program that is widely used to download shared files. Users of Shareaza are assigned a Global Unique Identifier ("GUID"). Detective Durm explained, "[i]t is like a VIN number to a car, it is unique to that piece of software on that computer." It is permanently associated with the user's computer. Each file is also assigned a unique identifier called a Secure Hash Algorithm ("SHA-1").

When a user downloads Shareaza, the software keeps track of the SHA-1 of every file the user downloads. The software also stores a packet of that information that is connected to the user's IP address and is accessible to other users. Detective Durm testified that law enforcement agencies are notified by the software when files containing sexual exploitation images and videos are shared by a particular IP address. Agencies then contact internet service providers to determine the geographic area associated with the IP address and alert local law enforcement to investigate.

On April 1, 2015, Detective Durm received information about suspicious activity on an IP address ending in -184. On April 10, 2015, Detective Durm connected that activity with other suspicious activity on an IP address ending in -156. Both IP addresses were used by a computer with the same GUID. The suspected Shareaza account had a nickname "Bob" attached to it. Detective Durm downloaded the files and determined that they depicted child pornography.

On April 14, 2015, Detective Durm obtained an administrative subpoena and faxed it to United Telephone Company (United Telephone), the owner of the IP addresses. On April 15, 2015, Detective Durm received a phone call from a representative of United Telephone, who explained that historical data on the IP addresses was not available with absolute certainty and that the company could only provide information about the holder of the IP addresses at the current time. The representative informed Detective Durm that it was "highly likely" that the IP address was being used by either Defendant or another customer, on April 1 and 10. Detective Durm testified that the representative "volunteered" information that Defendant was assigned IP address -156 on April 15, which was not a date included in the subpoena. On the same day that Detective Durm received this information from the representative, another file containing child pornography was downloaded by IP address -156 using the same GUID.

Detective Durm communicated with Sergeant Tiffany Host of the Bedford County Sheriff's Office, who obtained a search warrant for Defendant's residence on July 23, 2015, and executed it on July 24, 2015. Sergeant Host found Defendant's computer on and

"actively downloading child pornography." Sergeant Host obtained another search warrant for the contents of the computer in June of 2016, at the request of the Tennessee Bureau of Investigation ("TBI"). Regarding the length of time between the seizure of Defendant's computer and the TBI's search of the computer, Sergeant Host testified that the TBI's "backlog . . . to examine these computers is anywhere from 9 to 18 months." In August, 2015, the TBI requested a copy of the July 23 search warrant from Sergeant Host. The TBI contacted Sergeant Host again in November or December, 2015 and requested another search warrant that included language allowing the TBI to search the computer.

Following the hearing, the trial court entered a written order denying Defendant's motion to suppress. Defendant subsequently pleaded guilty while reserving eight certified questions for this Court's review.

### *Analysis*

Pursuant to Rule 37(b)(2)(A) of the Tennessee Rules of Criminal Procedure, a defendant may plead guilty and appeal a certified question of law that is dispositive of the case so long as certain conditions are met. This Court has explained the process as follows:

> After entering a guilty plea under Tenn. R. Crim. P. 11(a)(3), a defendant must explicitly reserve, with the consent of the state and the trial court, the right to appeal a dispositive question of law. In addition to reserving the question of law, the defendant must draft the question so that its scope and limits are clearly stated for the reviewing court. Appellate courts lack jurisdiction to hear any issue beyond the scope of the certified question.

*State v. Springer*, 406 S.W.3d 526, 530-31 (Tenn. 2013) (footnote omitted) (citations omitted).

Here, the certified questions were properly reserved. The trial court entered an order stating that the State and Defendant consented to reserving the certified questions and that the parties agreed the questions were dispositive. Whether the certified question is dispositive of the case, however, is a question of law, and we review the issue de novo. *State v. Dailey*, 235 S.W.3d 131, 134-35 (Tenn. 2013) ("The appellate court, however, 'is not bound by the determination and agreement of the trial court, a defendant, and the State that a certified question of law is dispositive of the case.'" (quoting *State v. Thompson*, 131 S.W.3d 923, 925 (Tenn. Crim. App. 2003)). A question is only dispositive "when the appellate court must either affirm the judgment of conviction or reverse and dismiss the charges." *Daily*, 235 S.W.3d at 134 (internal quotations and alterations omitted). "[A]ppellate review must be denied if the record does not clearly demonstrate how the question is dispositive." *State v. Oliver*, 30 S.W.3d 363, 364 (Tenn. Crim. App. 2000).

## I.

Taking each of Defendant's certified questions in turn, the first question asks this Court to determine "[w]hether the trial court erred in ruling that 'highly likely' but 'could not guarantee' [that Defendant] was the subscriber was sufficient to establish probable cause for the issuance of a search warrant." Defendant asserts that this conclusion by the trial court was insufficient to establish a nexus between Defendant and the criminal activity. The State argues that even if the identity of Defendant as the user of the IP address was not sufficiently established, there was other ample evidence to support the issuance of the search warrant, and therefore, the question is not dispositive.

In Tennessee, a trial court may issue a search warrant only when a written and sworn affidavit contains evidence providing the basis for a finding of probable cause. *State v. Henning*, 975 S.W.2d 290, 294 (Tenn. 1998). In determining whether an affidavit establishes probable cause for the issuance of a warrant, a court must examine the totality of the circumstances. *State v. Tuttle*, 515 S.W.3d 282, 289 (Tenn. 2017). "Determinations of probable cause are extremely fact-dependent." *State v. Bell*, 429 S.W.3d 524, 534-35 (Tenn. 2014) (citing *Ker v. California*, 83 S. Ct. 1623 (1963)).

"'Articulating precisely what probable cause means is not possible.'" *State v. Reynolds*, 504 S.W.3d 283, 300 (Tenn. 2016) (quoting *Ornelas v. U.S.*, 116 S. Ct. 1657, 1661 (1996)) (quotation marks and alterations omitted)). "Probable cause is more than a mere suspicion but less than absolute certainty." *Id*. (internal citations and quotation marks omitted). "[T]he strength of the evidence necessary to establish probable cause . . . is significantly less than the strength of evidence necessary to find a defendant guilty beyond a reasonable doubt." *State v. Bishop*, 431 S.W.3d 22, 41 (Tenn. 2014); *see also Brinegar v. U.S.*, 69 S. Ct. 1302 (1949) (discussing the differences between the probable cause standard and the standard for proving guilt beyond a reasonable doubt). Probable cause, as its name implies, deals with probabilities. *Brinegar*, 69 S. Ct. 1302. "These [probabilities] are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar*, 69 S. Ct. 1302; *see also Reynolds*, 504 S.W.3d at 300 (recognizing that the probable cause standard is practical and nontechnical).

The affidavit supporting the July 23, 2015 search warrant states that on April 14, 2015, Detective Durm had an administrative subpoena issued to United Telephone to produce subscriber information for the IP addresses ending in -184 and -156. The affidavit

- 4 -

states that on April 28, 2015,[1] Detective Durm received a response from United Telephone that it could "only tell who the IP address [wa]s assigned to at the current time." The company representative's response to the subpoena stated, "I cannot guarantee that the IP addresses of [ ]156 and [ ]184 were issued to these specific subscribers on the dates mentioned in the subpoena . . . , it is highly likely that" the IP address ending in -156 was issued to Defendant. It further stated with certainty that the IP address ending in -156 was issued to Defendant "as of 1:35:00 [on] 04/15/15."

In its written order denying Defendant's motion, the trial court noted that "the terms 'likely' and 'probable' are noted as synonyms by Merri[am]-Webster Dictionary. Thus, the answer from United Telephone could have just as easily been couched in terms of 'highly probable' as opposed to 'highly likely' with the end meaning being the same." The trial court further concluded that "[a] guarantee is not required" for a finding of probable cause.

Applying the legal standards of probable cause to the facts of this case, we conclude that the trial court's conclusion was proper. Moreover, the affidavit specifically states that on April 15, 2015, Detective Durm discovered a download of pornographic material to the IP address that United Telephone confirmed belonged to Defendant on April 15, 2015. As the State points out, even without a sufficient connection between Defendant and the IP address on dates prior to April 15, 2015, the affidavit contains ample evidence to support the issuance of a search warrant. The trial court properly concluded that the warrant was supported by probable cause. Additionally, the identification of Defendant as the user of the IP address on April 15 makes the certified question not dispositive.

## II.

Defendant's second certified question states: "Whether the omission of 'positive identifiers' in the application for a search warrant render it suppressible." The State asserts that the question fails to clearly identify the scope and limits of the issue presented because Defendant "appears to confuse the particularity and probable cause requirements of warrants."

In his brief, Defendant cites caselaw regarding the requirement that a search warrant describe the property and place to be searched with particularity. Defendant's argument also incorporates his argument regarding probable cause from his first certified question.

---

[1] Detective Durm's testimony at the suppression hearing was that he received a telephone call from a representative of United Telephone on April 15, 2015; however, the affidavit states that United Telephone responded to the administrative subpoena on April 28, 2015. Whether the affidavit misstates the date or Detective Durm received both a telephone call on April 15 and a written response on April 28, the information conveyed by United Telephone is the same.

He asserts that "the affidavit fails for a lack of specificity" because the statements "highly likely" and "could not guarantee" "fall short of the 'excluding all others' contemplated in [*State v.*] *Smith*[, 868 S.W.2d 561, 572 (Tenn. 1993)]." Defendant asserts that "the affidavit . . . is lacking in positive identifiers and specific facts to warrant the issuance of a search warrant to a specific address against a specific individual." Defendant's argument confuses the particularity of a warrant requirement with the sufficiency of the evidence in the affidavit to support the warrant. Defendant's first question regarding the probable cause requirement has already been answered, and Defendant offers no evidence or argument in support of his apparent challenge to the particularity of the warrant. Defendant does not cite to the record, nor does he state how the warrant fails to identify with particularity the place to be searched or the items to be seized as required by the Fourth Amendment and article I, section 7 of the Tennessee Constitution. *See* Tenn. R. Crim. P. 10(b).

The certified question is overly broad because it does not clearly identify the scope and limits of the legal issue reserved. Defendant bears the burden of "reserving, articulating, and identifying the issue." *State v. Pendergrass*, 937 S.W.2d 834, 838 (Tenn. 1996). The question does not narrowly construe the issues and does not sufficiently identify the scope and limits of the alleged constitutional violations. Moreover, the question does not articulate the factors supporting the Defendant's argument that the warrant lacks specificity. Accordingly, we will not consider the merits of this certified question.

### III.

Defendant's third certified question relates to the legality of United Telephone's voluntary disclosure of information that Defendant contends was beyond the scope and parameters of the subpoena. The question asks, "[w]hether the conduct of United Telephone and law enforcement exceeded the parameters of the administrative subpoena issued on April 14, 2015 and information given for conduct on April 15, 2015@ 1:35 p.m. required another administrative subpoena or search warrant to retain evidence of the conduct at that time."

In his brief, Defendant contends that United Telephone violated the Stored Communications Act ("SCA") by disclosing information that exceeded the scope of the administrative subpoena issued pursuant to Rule 17 of the Tennessee Rules of Criminal Procedure. Essentially, Defendant argues that United Telephone provided more information than what was requested by the subpoena, and because the search warrant was issued based on the additional information provided, the warrant and evidence obtained pursuant to the warrant should have been suppressed by the trial court.

The State argues that the certified question is not dispositive because the remedy for such a violation, if one occurred, is not suppression of evidence. *U.S. v. Guerrero*, 768 F.3d 351, 358 (5th Cir. 2014). We agree. We need not address whether the information provided by United Telephone in response to the subpoena violated the SCA because even if Defendant could show that the information was obtained in violation of the SCA, in order to suppress the evidence, Defendant must show that it was obtained in violation of his Fourth Amendment rights. In order to establish a violation of his Fourth Amendment rights, Defendant would have to show that he had an expectation of privacy in the records provided by United Telephone. This Court has previously concluded that no reasonable expectation of privacy exists in telephone records and data furnished by a cellular provider pursuant to a subpoena. *See State v. Hodgkinson*, 778 S.W.2d 54, 62 (Tenn. Crim. App. 1989). We conclude that the certified question is not dispositive.

*IV.*

In his fourth certified question, Defendant asserts that the State failed to timely produce the administrative subpoena in response to his requests for discovery. Again, this question is not dispositive of the case. Defendant's certified question, "[w]hether the two discovery requests should have produced the administrative subpoena used by law enforcement prior to the motion hearing on February 1, 2019," is not determinative of the success of Defendant's motion to suppress.

Upon his or her request, a defendant is entitled to inspect and copy or photograph documents in the State's possession if the document is material to preparing the defense, is part of the State's case-in-chief, or was obtained from or belongs to the defendant. *See* Tenn. R. Crim. P. 16(a)(1)(F). The duty to disclose is a continuing obligation, which includes additional evidence discovered up to and during the trial. *See* Tenn. R. Crim. P. 16(c). If a party fails to comply with the rule, the trial court may 1) order compliance, 2) grant a continuance, 3) prohibit the party from introducing the undisclosed evidence, or 4) enter such other order as it deems just under the circumstances. Tenn. R. Crim. P. 16(d)(2). Whether a defendant has been prejudiced by a failure to disclose information is a significant factor in fashioning an appropriate remedy. *State v. Smith*, 926 S.W.2d 267, 270 (Tenn. Crim. App. 1995). Exclusion of the evidence is considered a "drastic" measure, not recommended unless no reasonable alternative exists. *Id*.

The record shows that Defendant filed two discovery motions, one on September 21, 2018, and the second on November 13, 2018. The second motion specifically requested "[t]he original search warrant presented to United Telephone by [Detective Durm] Winchester P.D. sometime between April 14, 2015 and April 28, 2015 and the report issued by United Telephone on or about April 28, 2015 which was the basis of the [s]earch [w]arrant issued on July 24, 2015." The subpoena and search warrant were made exhibits

to the hearing on Defendant's motion to suppress on February 1, 2019, within three months of Defendant's request.

Because suppression of the evidence would not be the remedy for any delay in Defendant being provided the subpoena, the question is not dispositive.

*V.*

In his fifth certified question, Defendant asserts that the trial court "erred in ruling that a subsequent search warrant to search the contents of the computer seized on June 24, 2015, issued on June 28, 2016 was unnecessary." In its order denying Defendant's motion to suppress, the trial court discussed the issuance of the subsequent search warrant based on the TBI's request that it include with more particularity the items to be seized. The court quoted language from the original search warrant issued on July 23, 2015 and noted, "it does not appear that the second search warrant . . . was even necessary." Whether this Court agrees with the trial court's comment that the second search warrant was necessary, is not dispositive of the case. The evidence seized pursuant to the second search warrant would be admissible if the second warrant was held to be valid. Because the success of Defendant's motion to suppress does not depend on resolution of this question, the question is not dispositive.

*VI.*

Defendant's sixth certified question asks, "[w]hether notice of the issuance of the subsequent search warrant on June 28, 2016 to [D]efendant or his counsel was required pursuant to T.C.A. [§] 40-6-101 et seq." Defendant complains that neither he nor his attorney were personally given a copy of the second search warrant. The State argues that police were not required to personally serve Defendant with a copy of the second warrant.

Rule 41 of the Tennessee Rules of Criminal Procedure imposes "procedural safeguards [which] are intended 'to secure the citizens against carelessness and abuse in the issuance and execution of search warrants.'" *State v. Coffee*, 54 S.W.3d 231, 233 (Tenn. 2001) (quoting *Talley v. State*, 208 Tenn. 275, 345 S.W.2d 867, 869 (1961)). Specifically, Rule 41(e)(4) requires that an officer executing a search warrant must 1) give a copy of the warrant to the person from whom or from whose premises property was taken, or 2) leave a copy of the warrant at the place from which property was taken. Tenn. R. Crim. P. 41(e)(4). Defendant asserts that he was not given "notice" of the June 2016 warrant. The State responds that Defendant "has presented no evidence that law enforcement failed to comply" with the requirements of Rule 41(e)(4) and that the rule does not require that an officer give notice of a subsequent search to the owner of the already-seized property.

In its order denying Defendant's motion to suppress, the trial court noted that "[D]efendant had long been dispossessed of his property and it had been in possession of the TBI in Nashville" at the time of the issuance and execution of the second search warrant. The trial court further noted that it was "inconceivable [D]efendant did not know his computer was going to be searched as that was plainly stated in the search warrant he was served in [July, 2015]." The court's order then compares the "near identical language" from the first and second warrants and concludes that a second search warrant was unnecessary "and any complaint by [D]efendant as to some irregularity is without merit."

We agree with the trial court's assessment. Defendant's computer was seized during the execution of the first search warrant in July, 2015. The "near identical" second search warrant was issued after the computer had been in the possession of the TBI for almost one year. The purpose of providing notice to the owner of seized property is to notify the owner of the source of the seizure so that the owner can pursue available remedies for its return. *State v. Watson*, 227 S.W.3d 622, 645 (Tenn. Crim. App. 2006) (citing *City of West Covina v. Perkins*, 525 U.S. 234, 240 (1999). However, "'the prevailing view is that noncompliance with . . . [notice] does not compel exclusion of the evidence obtained pursuant to the warrant, at least absent prejudice to the defendant or a deliberate disregard of the notice provision.'" *Id*. (quoting 2 Wayne R. LaFave, Search and Seizure, § 4.12(b) (4th ed. 2004) (footnote omitted)).

Moreover, as the State points out, there is no proof that law enforcement failed to comply with the notice requirement. Personal service of a search warrant upon a defendant is not strictly necessary for compliance with Rule 41(e). *See Watson*, 227 S.W.3d at 645 (holding that service of a search warrant upon a defendant's counsel satisfied Rule 41's notice requirement); *State v. Thomas Eugene Davis*, No. E2008-02741-CCA-R3-CD, 2010 WL 98886, at *7-8 (Tenn. Crim. App. Jan. 12, 2010), *no perm. app. filed* (holding that delivery of the warrant to jail officials where the defendant was incarcerated satisfied Rule 41).

## VII.

In his seventh certified question, Defendant asks "[w]hether the absence of a return and property log on the June 28, 2016 search warrant renders the evidence inadmissible and void pursuant to Rule 41 and T.C.A. [§] 40-6-101 et seq." Tennessee Rule of Criminal Procedure 41(f)(1) requires that an officer executing a search warrant "promptly make a return, accompanied by a written inventory of any property taken." Tenn. R. Crim. P. 41(f)(1). Tennessee Code Annotated section 40-6-107 provides that "[a] search warrant shall be executed and returned to the magistrate by whom it was issued within five (5) days after its date, after which time, unless executed, it is void." T.C.A. § 40-6-107. Defendant

also repeatedly cites in his brief the Exclusionary Rule Reform Act, which our supreme court held unconstitutional in *State v. Lowe*, 552 S.W.3d 842 (Tenn. 2018).

As the State points out, "the return of an officer upon a search warrant does not affect the validity of the warrant and the officer's execution thereof, and irregularities in regard to the return do not render evidence secured thereunder inadmissible." *Squires v. State*, 525 S.W.2d 686, 692 (Tenn. 1975); *see Smith v. State*, 566 S.W.2d 553, 557 (Tenn. 1978) ("Any defect in the ministerial functions involved in the return of a search warrant and the handling of the seized items cannot vitiate the validity of a lawful search."). The return upon a search warrant is a ministerial function and does not affect the validity of the warrant or its execution. *Watson*, 227 S.W.3d at 645 (citing *State v. Hilliard*, 906 S.W.2d 466, 468 (Tenn. Crim. App. 1995).

Defendant argues that "the lack of a return in any form mandates exclusion and any evidence it produced is likewise suppressed." However, even if lack of a return were a basis for suppression under Rule 41 or the associated statutes, suppression would not be the mandatory relief. Tenn. R. Crim. P. 41(g) ("[t]he motion to suppress . . . *may* be granted") (emphasis added). We disagree with Defendant's assertion that the absence of a return of the second search warrant would entitle Defendant to suppression of the evidence collected pursuant to the warrant. In *State v. Daniel*, our supreme court determined that an officer's failure to give the defendant a copy of the search warrant was a good-faith clerical error. 552 S.W.3d 832, 841 (Tenn. 2018); *Lowe*, 552 S.W.3d at 859. Here, Defendant's certified question does not encompass such a review, and the issue is beyond the scope of the certified question.

## *VIII.*

Defendant's eighth and final certified question address the staleness of the search warrant. The question asks, "[w]hether the information obtained in early April, 2015 was to[o] stale for the issuance of an administrative subpoena or search warrant on Ju[ly] 23, 2015 absent some proof of continuing conduct by [D]efendant[.]" The State argues that the trial court properly concluded that the information contained in the affidavit was not stale and that probable cause existed to support the issuance of a search warrant.

The question of staleness of the information in the affidavit accompanying a search warrant is made on a case-by-case basis. *State v. Norris*, 47 S.W.3d 457, 470 (Tenn. Crim. App. 2000); *State v. Meeks*, 876 S.W.2d 121, 124 (Tenn. Crim. App. 1993). In determining whether the lapse of time between criminal activity and the issuance of a warrant may affect the likelihood that incriminating evidence will be discovered if a warrant is issued, the magistrate "should consider whether the criminal activity under investigation was an isolated event or of a protracted and continuous nature, the nature of the property sought,

and the opportunity those involved would have had to dispose of incriminating evidence." *Meeks*, 876 S.W.2d at 124-25 (citing *Sgro v. U.S.*, 53 S. Ct. 138 (1932)). As a general principle, information regarding ongoing criminal activity does not become stale due to the passage of time. *Norris*, 47 S.W.3d at 470 (citing *State v. Thomas*, 818 S.W.2d 350, 357 (Tenn. Crim. App. 1991)).

In its order denying Defendant's motion to suppress, the trial court noted, "[t]his might be a valid position and problematic for the [S]tate if it was in the context of something transient in nature like drugs, for instance. However, the material is child pornography downloaded on a computer." With regard to the nature of the evidence sought, this Court has observed that "'child pornography is not fleeting or isolated . . . . Rather, the collection and sharing of child pornography is of a continuous and ongoing nature and typically remains in possession of the user for an extended period of time.'" *State v. Robert D. Ewing and Anthony T. Ewing*, No. E2013-01587-CCA-R3-CD, 2014 WL 2609463, at *7 (Tenn. Crim. App. June 11, 2014), *no. perm. app. filed*.

In *Robert D. Ewing*, the search warrant was not issued until approximately four months after the evidence of incriminating activity involving child pornography was discovered. *See id*. at *6. Similarly, in *State v. Domnick Doria*, a panel of this Court affirmed the trial court's determination that a delay of approximately three months between the discovery of incriminating activity involving child pornography and the issuance of a search warrant did not render the information too stale to support probable cause. No. M2014-01318-CCA-R3-CD, 2016 WL 1694120, at *11 (Tenn. Crim. App. April 26, 2016), *perm. app. denied* (Tenn. Aug. 17, 2016). In *State v. Carrington Owens*, No. M2018-01830-CCA-R3-CD, 2020 WL 1130667, at *5 (Tenn. Crim. App. Mar. 9, 2020), *perm. app. denied* (Tenn. June 3, 2020), a panel of this Court determined that a search warrant issued seven months after the specified IP address had been associated with a download of child pornography, was not stale.

Defendant does not challenge the length of time between the illegal activity described in the affidavit and the issuance of the search warrant. Rather, he asserts that there was "no proof of continuing conduct" between criminal activity described in the affidavit and the issuance of the warrant. Defendant cites *Robert D. Ewing* and *Domnick Doria* and argues that in this case, the illegal activity described was not "ongoing or continuous" but rather "an isolated event" because the affidavit does not state that a download occurred between April 16, 2015 and July 23, 2015.

Here, the affidavit in support of the issuance of the search warrant states that multiple files containing videos and images depicting the sexual exploitation of children were downloaded between April 1 and April 15, 2015. This was not an isolated incident, and we agree with the trial court that the nature of child pornography is continuous and

ongoing.  In the time between discovering the downloads and securing a search warrant, officers verified Defendant's address and identity.  We conclude that the trial court did not err in determining that probable cause existed to believe that Defendant possessed child pornography three months after the illegal activity involving Defendant's IP address occurred.  Defendant is not entitled to relief.

## CONCLUSION

For the reasons set forth above, we affirm the judgments of the trial court.

_____
TIMOTHY L. EASTER, JUDGE